## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

CHESWELL, INC.,                    )
                                   )
            Plaintiff              )    Civil Action No. 04-30060
                                   )
        v.                         )
                                   )
JAMES F. KENNEY, et al.,           )
                                   )
            Defendant              )
                                   )

### MOTION TO DISSOLVE ATTACHMENT

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, Massachusetts Rule of Civil Proceeding 4.1(f), (g), (h) and (i), and other applicable rules, statutes, and case law, Mary Ann Mitchell (the "Defendant"), one of the defendants in the above captioned case, hereby requests an order of the Court dissolving the attachment (the Attachment") granted to the plaintiff, Cheswell, Inc. (the "Plaintiff") as it concerns property of Mary Ann Mitchell.  Mary Ann Mitchell seeks dissolution because the Plaintiff's *Ex Parte* Motion for Real Estate Attachments (the "Motion") and the accompanying affidavits are insufficient, there is no reasonable likelihood of success in favor the Plaintiff, the Complaint and Motion are misleading, and the Complaint and Motion request relief that violates the Bankruptcy Code.  In further support, the Defendant Mary Ann Mitchell states as follows:

### BACKGROUND

The Complaint appears to seek security against third parties for damages that the Plaintiff has against James F. Kenney and Premier Land and Homes Corporation ("Premier"), granted in Civil Case No. 02-30115-KPN.  Mr. Kenney and Premier have plainly been charged with acts that, if proven, should not go unpunished.  However, seeking unwarranted relief against unrelated third parties is not justified under any circumstances.  The Complaint and Motion seem to suggest that title to certain property in Belchertown (the "Mitchell Property") has been the subject of recent transfers and, perhaps, was transferred recently into the name of Mary Ann Mitchell when Mr. Kenney, Premier, and/or J.F. Kenney Corporation ("Kenney Corp.") are the real parties in interest so as to evade court orders and creditors.  Such allegations are plainly false as demonstrated below.

## THERE IS NO REASONABLE LIKELIHOOD OF SUCCESS FOR THE PLAINTIFF

All facts lead to only one conclusion - - that **Mary Ann Mitchell** will prevail on all issues.

Mary Ann Mitchell is a seventy (70) year old retired school teacher living on a fixed pension, **without** social security benefits.  Although she owns her own home, a condominium in Chicopee, and has some savings, her principal asset and anticipated source of future revenue is property of approximately 40 acres located in Belchertown (the "Mitchell Property").  As a retired person, she has significant expenses for maintenance of her real properties and other matters.

**Ms. Mitchell and her family have owned the Mitchell Property for over fifty (50) years.**  In 1946, Mary Ann Mitchell's father and mother initially purchased property in Belchertown, comprised of approximately 4 acres.  Subsequently, in 1950, Mary Ann Mitchell's parents purchased approximately 40 additional acres adjacent to the first purchase to supplement this first purchase[1].  Almost immediately, in 1952, the Mitchells recognized that the property could be enhanced by the addition or swapping of neighboring property (presently owned by Ms. Lamitie and also a defendant in this case).  In 1983, Mary Ann Mitchell made inquiry concerning the ownership of the neighboring property for similar reasons.  Attached as Exhibit "A" are true and accurate copies of letters from Mary Ann Mitchell's father and Mary Ann Mitchell making these inquiries.

In 1971, Mary Ann Mitchell's parents transferred ownership of the Mitchell Property to Mary Ann Mitchell and her mother.  In 1986, Mary Ann Mitchell's mother transferred her interest to Mary Ann Mitchell.  True and accurate copies of all these deeds **demonstrating over fifty (50) years of ownership** are attached hereto as Exhibit "B."

For many years, Mary Ann Mitchell, by herself and with her neighbors, the Lamities, has spent significant time and considerable resources preparing the Mitchell Property for possible development.  This has included the following:

    (i)    In 1988, the Lamities contacted Mary Ann Mitchell about checking out their boundaries.  With the

---

[1]  Actually, part of this second purchase included a land locked lot used for lumber that was separated by a strip of land presently owned by Ms. Lamitie, although an easement may exist for access.  Additionally, although the deed suggest that nearly 90 acres was purchased, Ms. Mitchell understands, based upon a survey she obtained many years ago, that the property is only comprised of approximately forty (40) acres.

help of a forester in 1989, they walked their land together.   Shortly thereafter, Mary Ann Mitchell decided to go a step further and have the Mitchell Property surveyed.

(ii)    In 1989, Mary Ann Mitchell filed a Forest management Plan, Chapter 61, that remained active for more than ten (10) years.

(iii)   Beginning in 1997, Mary Ann Mitchell and the Lamities began working seriously to put their respective properties together to achieve a successful development.   Combining the properties would provide access from two streets (State Street and Summit Street), and provide access to a landlocked parcel.   At this time Jim Kenney provided them informal advice about procedures (it was about this time that Mary Ann Mitchell first met Mr. Kenney).   Mary Ann Mitchell made no promise of compensation or transferring any of the parcels to Mr. Kenney or any corporation.   Indeed, it was expressly understood that there was to be no compensation in anyway, with the possible exception of him or his corporation/employer being a listing agent whereupon such agent would receive a commission as a broker upon a sale.   All properties would be sold to the highest bidder/offeror.   Since Mr. Kenney is no longer a broker, he cannot and will not receive any commission, or any other compensation from Mary Ann Mitchell for any sales.[2]

All expenses have been paid by Mary Ann Mitchell (and the Lamities).   These included funds for surveys that exceeded $20,000.   Mary Ann Mitchell and the Lamities alone shared the cost for the Preliminary Plan Application (a total cost of $2,350.00).   Mary Ann Mitchell has also paid for all other expenses on the Mitchell property, including taxes.   True and accurate copies of various checks for various expenses are attached hereto as Exhibit "C."

Mary Ann Mitchell presently owns the property in her name only, and believes that she alone owns and controls it.   Mary Ann Mitchell has no agreement to transfer the Mitchell Property to Mr. Kenney or any company related to Mr. Kenney.   She has no agreement to compensate Mr. Kenney or pay him any sums.   In the

---

[2]    Mary Ann Mitchell did sell as many as 10 lots from the Mitchell Property starting in the late 1990's.   Upon the sale of these properties there were brokerage commissions.   In many of these cases, either Mr. Kenney, his employer, or a company in which he had a role or interest, received the broker fee.   In at least one of these cases, the recipient was a real estate broker company in which Mr. Kenney was only an employee.

event that the preceding is somehow interpreted as being drafted to evade some unstated obligation or interest, we state unequivocally that Mary Ann Mitchell is the sole and only owner of any and all interests in the Mitchell Property, with absolutely no obligation, agreement, or decision to compensate or pay Mr. Kenney or any corporation in which he has an interest or involvement.  The Affidavit of Mary Ann Mitchell attesting to the preceding is attached hereto as Exhibit "D."

In contrast to the preceding, the only "facts" asserted in the Complaint are (i) a Preliminary Plan Application and (ii) a loan of funds to Mr. Kenney that was used for the Premier Chapter 11 case.  Both assertions do not support the Plaintiff's position, but, instead, **support Mary Ann Mitchell's position that she is the sole owner of the Mitchell property without any obligation or agreement to Mr. Kenney and/or his interests**:

(i)     Although the Preliminary Plan Application is signed by Kenney Corporation as the applicant, the Preliminary Plan Application is signed by **Mary Ann Mitchell as the owner.**  Mary Ann Mitchell's representation in the application that she is the owner is exactly that, that **she alone is the owner**. Accordingly, the application **supports** Mary Ann Mitchell's position.

(ii)  Mary Ann Mitchell has lent funds to Mr. Kenney and, in fact, they exceed $50,000.  However, her loan of funds is what is stated on the bankruptcy affidavit, a loan only, and creates no obligation to transfer property of Ms. Mitchell's to Mr. Kenney or any corporation in which he has an interest or role.  In contrast, it creates the opposite obligation, that Mr. Kenney owes Ms. Mitchell an obligation.  Accordingly, the loan of funds **supports** Mary Ann Mitchell's position.

Based upon the preceding, there is no reasonable likelihood of success in favor of the Plaintiff.  In fact, based upon the preceding, there is a reasonable likelihood of success in favor of Mary Ann Mitchell.

<u>**THE MOTION FOR AN EX PARTE ATTACHMENT**</u>
<u>**AND THE ACCOMPANYING AFFIDAVITS ARE INSUFFICIENT**</u>

Massachusetts Rule of Civil Procedure 4.1(f) requires a finding that "there is a clear danger that the defendant if notified in advance of attachment of property will convey it." This rule also provides that the "motion, in the filing of which the plaintiff's attorney shall be subject to the obligations of Rule 11, shall be supported by affidavit or affidavits meeting

the requirements set forth in subdivision (h) of this rule."
Subdivision (h) provides that "[a]ffidavits required by this rule
shall set forth specific facts sufficient to warrant the required
findings . . . "

The Plaintiff's affidavits **fail to set forth any specific
facts** concerning any transfer of property by Mary Ann Mitchell.
Such a failure to comply with the rules should not go unnoticed,
if only because Rule 4.1 specifically references the plaintiff's
obligations to Rule 11. *See also Aetna Cas. and Sur. Co. v.
Rodco Auto Body*, 138 F.R.D. 328 (D. Mass. 1991).

Similarly, as stated above, Mary Ann Mitchell believes that
there are no facts asserted to support the finding that there is
a reasonable likelihood of success on the merits. The only facts
asserted concerning the merits are the application and loan,
which **support Mary Ann Mitchell's position**. The Plaintiff even
fails to note the over fifty (50) year history of ownership of
the Mitchell property. Although the Plaintiff takes great pains
to detail other defendants' records in the respective Registries
of Deeds, it is indeed unfortunate, when these documents are
readily available at the Hampshire Registry of Deeds, that the
Plaintiff and its counsel were unable to research this issue.[3]

## THE MOTION, COMPLAINT, AND MEMORANDUM ARE MISLEADING AND VIOLATE PROVISIONS OF TITLE 11

The Motion, Complaint, and Memorandum have the following
fatal errors:

- On page 5 of the Memorandum, Plaintiff states that
  Mr. Kenney has "avoided his creditors by placing
  multiple corporations into bankruptcy." The Plaintiff,
  however, does not identify such corporations. The only
  other corporations in Chapter 11 related to Mr.
  Kenney[4] are Keep Safe Self-Storage, Inc. and College
  Self-Storage, Inc., two jointly administered cases,
  Case Numbers 03-42756-HJB and 03-42756-HJB, which are
  confirmed Chapter 11 cases providing 100% dividends to
  all creditors; additionally, according to the

---

[3]    When, in a brief conversation with counsel to the
Plaintiff, the undersigned counsel asked whether Plaintiff's
counsel knew how long this property was in the Mitchell family,
Plaintiff's counsel responded that "she had no idea."

[4]    A search of debtors in Pacer does not disclose any other
Chapter 11 cases, including these two detailed. In an abundance of
caution, counsel for Mary Ann Mitchell contacted the trustee of
Premier Homes which informed him of these two cases.

Disclosure Statement filed and approved by the
Bankruptcy Court, these cases were filed when the
mortgage holder was about to foreclose, and the only
way to protect unsecured creditors (which, again, are
being paid 100% of their claims) from losing an
opportunity to recovery due to foreclosure was to
commence Chapter 11 cases.

- Paragraph c of the wherefore clause of the Complaint
seeks remedies concerning a possible judgment against
Premier Land and Homes Corporation. Further, it
appears to request that the assets of which the
Plaintiff seeks to recover (which Ms. Mitchell disputes
as it concerns herself) be recovered as property of
Premier; indeed, the Complaint (in this case) appears
to only assert that it requires the relief requested to
protect its rights to collect a judgment against
Premier in alleged property owned by Premier. As such,
this is property of the Premier trustee. See, e.g., 11
U.S.C. §544(a) ("[t]he trustee shall have . . . the
rights and powers of . . . (2) a creditor that . . .
obtains . . . an execution against the debtor that is
returned unsatisfied . . . whether or not such creditor
exists"). A review of the bankruptcy docket for
Premier does not reveal any orders granting relief from
stay, nor does the docket show any abandonment of any
interest that the Premier trustee may assert (which Ms.
Mitchell, again, disputes as it concerns herself). The
Bankruptcy Code's automatic stay provisions prevent the
collection of assets of a debtor for the benefit of a
third party.

- The language in the Complaint and other pleadings is
misleading because the they suggest that Ms. Mitchell's
property is owned by the Lamitie Revocable Trust, as
opposed to the ownership of this property in fee simple
by Ms. Mitchell solely.

- Paragraph 44 of the Complaint asserts that "[O]n
information and belief, the reason that the title to
the Mitchell Property remains vested in Mary Ann
Mitchell and Margaret C. Lamitie as trustee of the
Lamitie Revocable Trust is to delay, defraud or hinder
Cheswell with respect to the debts Premier and Mr.
Kenney owe Cheswell." Although modern rules of
pleading only require notice pleadings, mere conclusory
allegations, without any details, are at least
discouraged, and possibly inappropriate. Considering
the seriousness of the allegations, the Mitchell's
history of ownership, and the circumstances of Mary Ann
Mitchell, such conclusory assertions should be
considered insufficient as allegations and specific
facts provided.

- Similarly, Paragraph 57 asserts that Mr. Kenney or J.F. Kenney Corporation has purchased the Mitchell Property. Again, such serious allegations should be supported by specific facts, not conclusory or speculative statements.

## CONCLUSION

As the affidavits of the Plaintiff are insufficient for the granting of *ex parte* relief, there is no reasonable likelihood of a judgment as it concerns Mary Ann Mitchell, the various pleadings of the Plaintiff are misleading, and the Plaintiff's requests violate provisions and principles of bankruptcy law, the attachment should be discharged. As the attachment is without any basis and fails to comply with the applicable rules, Mary Ann Mitchell requests that costs be awarded.

**WHEREFORE**, the Mary Ann Mitchell requests the entry of the following Findings and Orders:

1. A finding that the Affidavits and Motion were insufficient under Massachusetts Rule 4.1;

2. A finding that there is no likelihood that the Plaintiff will receive judgment against Mary Ann Mitchell;

3. A finding that there is a reasonable likelihood that Mary Ann Mitchell will prevail in this case;

4. An order discharging/dissolving the Attachment;

5. An order awarding Mary Ann Mitchell her costs;

6. An order granting such other and further relief as this Court finds just and proper.

MARY ANN MITCHELL

Dated: April 14, 2004

Louis S. Robin (BBO 545578)
Fitzgerald, O'Brien & Robin
1200 Converse Street
Longmeadow, Massachusetts  01106
Tel. No. (413) 567-3131
Fax. No. (413) 565-3131

## CERTIFICATE OF SERVICE

I, Louis S. Robin, Esq., hereby certify that on April 14, 2004, I served a copy of the foregoing pleading by hand delivery

-7-

of a copy of it to Felicity Hardee, Esq., Bulkley, Richardson and Gelinas, LLP, 1500 Main Street, Springfield, MA  01115-5507.

Louis S. Robin, Esq.

Exhibit "A"

SPRINGFIELD
JAN 18
10:30 AM
2   1952
MASS.

Ms. Lea J. Boulais
27 Orchard St
Holyoke
Mass.

D.H. Mitchell
39 Ledyard St.
Springfield
Mass.

4-75-00

Jan. 18, 1952.

Dear Mr. Barlow,

We recently purchased the Belding farm in Belchertown, with the acquired a was which is separated from the main farm land by land owned by you.

We wondered if we might trade our wood lot which borders your land on the east side for some of your land on the north side which

would make, and find
one parcel.
We get we dont know
just where our wood
lot is or how to get
to it. We only know
it's northern bound-
ary which is our south-
ern boundary.
Could you tell me
how to reach our
wood lot or your land?
We would appreciate
hearing from you.
Yours very truly
W.H. Mitchell
39 Ledyard St
Springfield 4, Mass



Exhibit "B"

Exhibit B

Exhibit "B"

ALL-STATE LEGAL SUPPLY CO.   1-800-222-0510   FORM 1

2939

**Book 1004**

178

WARRANTY DEED

Edward Pinski
et ux

To

David H. Mitchell
et ux

4 A.

State Street

Belchertown

See Book *1617*
Page *270*

K N O W   A L L   M E N   B Y   T H E S E   P R E S E N T S

That we, Edward Pinsky and Stella Pinsky, husband and wife, both of Belchertown, Hampshire County, Massachusetts, for consideration paid, grant to David H. Mitchell and Mary A. Mitchell, husband and wife, as joint tenants and to the survivor of them, of 39 Ledyard Street, Springfield, Massachusetts with WARRANTY COVENANTS the land in said Belchertown bounded and described as follows:

Beginning at an iron pin on the South side of State Street at at Northeasterly corner of land herein granted and at Northwest corner of land now or formerly of Walter E. Henry and Catherine A. Henry; thence running south no degrees and two minutes west along center of stonewall on line of said Henrys a distance of three hundred forty-five and five-tenths (345.5) feet to iron pin; thence west no degrees and thirty-three minutes north on land now or formerly of said Henrys three hundred twenty-six (326) feet, thence continuing west along land of one Willard H. V. Belding four hundred eleven (411) feet to an iron pin; thence north no degrees and ten minutes east along land of said Belding sixty (60) feet to iron pin on said State Street; thence east along said State Street six hundred seventy-five (675) feet to State Highway bound stone, thence continuing east along State Street ninety-two (92) feet to point of beginning; containing four (4) acres more or less.

This conveyance is made subject to easement held by New England Telephone and Telegraph Company dated November 13, 1913 as recorded in Book 697, Page 115 Hampshire County Registry of Deeds.

Being part of the land conveyed to me by deeds of Frank L. Gold, Administrator of Estate of Fred S. Underwood dated July 14, 1931 and December 30, 1937 and recorded in Hampshire County Registry of Deeds Book 874, Page 97 and Book 929, Page 310.

We  release to said grantee all rights of tenancy by the curtesy dower and homestead and other interests therein.

WITNESS our hands and seals this nineteenth day of June 1946

        (    Edward Pinski      Seal

        (    Stella Pinski      Seal

THE  COMMONWEALTH  OF  MASSACHUSETTS

Hampshire  ss.  June 19, 1946  Then personally appeared the above-named
Edward Pinsky  and acknowledged the foregoing instrument to be
his  free act and deed.

                  Before me,  William E. Shaw  Justice of the Peace
                         My Commission expires January 30, 1953

HAMPSHIRE, ss.  June 20, 1946  at  11  o'clock and  52  minutes,  A.  M.
With Government Stamps $0.55 affixed and cancelled.

D;V 11-46-100

## Book 1004

179

KNOW ALL MEN BY THESE PRESENTS that I, Joachim Quenneville of South Hadley, Hampshire County, Massachusetts, being unmarried, for consideration paid, grant to Eli Quenneville of said South Hadley with MORTGAGE COVENANTS, to secure the payment of NINE HUNDRED Dollars as provided in my note of even date, the land with the buildings thereon situated in said South Hadley, bounded and described as follows: viz-

Beginning at the southeasterly corner of land now or formerly of one Hussey said point being on the northerly side of the road leading from South Hadley to Amherst, and thence running NORTHERLY along land now or formerly of said Hussey three hundred (300) feet to an iron pin set in the ground; thence running EASTERLY and parallel with said road first mentioned one hundred (100) feet to an iron pin set in the ground at land of Eli Quenneville; thence running SOUTHERLY ALONG THE last named land three hundred (300) feet to said road and an iron pin set in the ground; thence running WESTERLY along the northerly side of said road one hundred (100) feet to the place of beginning.

Being the same premises conveyed to me by deed of Eli Quenneville dated August 12th 1939 and recorded in Hampshire County Registry of Deeds Book 944, Page 216. Subject to a mortgage to the City Co-Operative Bank in the amount of two thousand dollars.

This mortgage is upon the statutory condition, for any breach of which the mortgagee shall have the statutory power of sale.

WITNESS my hand and seal this 15th day of June 1946

Ernest J Quenneville          Ⅹ   Joachim Quenneville     Seal

MORTGAGE DEED

Joachim Quenneville

To

Eli Quenneville

Amherst Rd.
South Hadley

*See Release*
Book ____1020____
Page ____249____

THE COMMONWEALTH OF MASSACHUSETTS

Hampden ss. ss. Holyoke, Mass. June 15th 1946 Then personally appeared the above-named Joachim Quenneville and acknowledged the foregoing instrument to be his free act and deed.

Before me, Ernest J Quenneville Notary Public
My Commission expires    April 17th   1953

HAMPSHIRE, ss. June 21, 1946 , at 9 o'clock and ─ minutes, A. M.
D: ℔

Book 1070

156

See Book 1617
Page 269

1070
—
156

2685

K N O W   A L L   M E N   B Y   T H E S E   P R E S E N T S,

THAT WHEREAS I, Lucy Maud Morgan, of Melrose, in the County of
Middlesex and The Commonwealth of Massachusetts, as EXECUTRIX
of the last will of Willard Henry Veasy Belding, late of
Belchertown, in the County of Hampshire and said Commonwealth,
by virtue of a license granted to me on the fifth day of April,
1950, by the Probate Court for the County of Hampshire, have
sold the real estate of the said deceased hereinafter described
at private sale to David H. Mitchell and Mary A. Mitchell,
husband and wife, of Springfield in the County of Hampden and
said Commonwealth, for the sum of Twenty-Six Hundred (2600) Dollars,

NOW THEREFORE, in consideration of the said sum of
Twenty-Six Hundred (2600) Dollars to me paid by the said David
H. Mitchell and Mary A. Mitchell, the receipt whereof is hereby
acknowledged, I do as EXECUTRIX as aforesaid, and by virtue of
the aforesaid license, hereby grant, bargain, sell, and convey
unto the said David H. Mitchell and Mary A. Mitchell, and the
survivor of them, as tenants by the entirety and not as tenants
in common, the following described real estate situate in said
Belchertown, namely:  Beginning at the NORTHWEST corner of the
home farm where the fence now stands; thence EASTERLY on lands
of Samuel F. Worcester and Asa Clark to said Clark's wall; thence
SOUTHERLY on land of said Clark to the highway, on the SOUTH
line of said highway; thence SOUTHERLY about six rods to said
Clark's corner; thence EASTERLY on said Clark's line to Elbridge
G. Underwood's WEST line; thence SOUTHERLY on said Underwood's
line to land formerly owned by Elijah Whitney; thence WESTERLY
and SOUTHERLY on said Whitney line to a stake and stones; thence
WESTERLY on said Whitney land to Samuel F. Worcester SOUTHWEST
corner; thence NORTHERLY on said Worcester's line as the fence
now stands, to the first mentioned corner, containing about
EIGHTY ACRES more or less; together with the buildings thereon
standing; also one other tract of land situate in said Belchertown;

Book 1070

157

containing about nine and one-half acres, bounded WEST and
NORTH on land formerly owned by Elijah Whitney, and EAST on
land of Theodore Blodgett and SOUTH on land of Samuel F. Worcester,
and for a more particular description reference may be had to
Hampshire Deeds recorded in Book 129 Page 498 and Book 129 Page
497.

_____ Being the premises described in a deed from Chauncey Howard
to Willard M. Belden, dated March 22, 1865, and recorded in said
Registry in Book 225 Page 279.

_____ TO HAVE AND TO HOLD the above-granted premises, with all the
privileges and appurtenances thereto belonging, to the said
David H. Mitchell and Mary A. Mitchell, and the survivor of them,
as tenants by the entirety and not as tenants in common, and
their heirs and assigns, to their own use and behoof forever.

_____ IN WITNESS WHEREOF I hereto set my hand and seal this
tenth day of April in the year one thousand nine hundred and
fifty.

Signed and sealed in presence of

_Audrey Smith_                    _Lucy Maud Morgan_
                                  Executrix of the will of
                                  Willard Henry Veasy Belding.

THE COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.  _____  April 13, 1950.

_____ Then personally appeared the above-named Lucy Maud Morgan
and acknowledged the foregoing instrument to be her free act and
deed, before me, _____

                        _William W. Rutter_
                        Notary Public.

              My commission expires _Feb. 13, 1951_.

June 2, 1950 at 11 o'clock & 10 minutes A. M.   Rec'd, Ent'd &Exam'd.