04 CV 30060-hPN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.
04-30060-KPN

CHESWELL, INC., )
    Plaintiff )
 )
v. )
 )
JAMES F. KENNEY, SUSAN M. KENNEY, )
MITCHELL R. DZWONKOWSKI, )
PAUL COSMAN, JR., CHERYL COSMAN, )
MARY ANN MITCHELL, )
MARGARET C. LAMITIE, TRUSTEE OF )
THE LAMITIE REVOCABLE TRUST, )
J.F. KENNEY CORPORATION )
    Defendants )

AFFIDAVIT OF MARGARET C. LAMITIE, TRUSTEE OF THE LAMITIE REVOCABLE TRUST IN SUPPORT OF MOTION FOR RELIEF FROM REAL ESTATE ATTACHMENT

    Now comes Margaret C. Lamitie, Trustee of the Lamitie Revocable Trust, and, making this affidavit under the penalties of perjury, states that the allegations made below are true of her own knowledge, information and belief and, so far as the facts are stated to be upon information and belief, she believes such information to be true.

1.     My name is Margaret C. Lamitie, and I am the Trustee of the Lamitie Revocable Trust.
2.     I am a resident of Leadville, Colorado.
3.     On or about January 30, 1984 I acquired from Veronica H. Boulais, my mother, certain real property located in Belchertown, Massachusetts, the deed to which is recorded in Book 2425 Page 195 of the Hampshire County, Massachusetts, Registry of Deeds (hereinafter "Belchertown Property"), a copy of which deed is attached hereto and incorporated herein as Attachment A.
4.     The Belchertown property has been in my family since my family acquired the property in 1936.
5.     Veronica H. Boulais acquired the "Belchertown Property" from the Town of Belchertown on or about October 10, 1936 and held it continuously until such property was transferred to me. The deed into Veronica H. Boulais is recorded in the Hampshire County, Massachusetts, Registry of Deeds at Book 932 Page 366, and a copy of said deed is attached hereto and incorporated herein as Attachment B.
6.     On or about the 21st day of July, 2001 I transferred the "Belchertown Property" to Robert E. Lamitie and Margaret C. Lamitie, Trustees of the Lamitie Revocable Trust, said transfer being recorded in the Hampshire County, Massachusetts, Registry of Deeds at Book 6312 Page 232, a copy of which is attached hereto as Attachment C. I have held the property as trustee since this transfer.
7.     Attached hereto as Attachment D is a true and accurate copy of the Lamitie Revocable Trust (hereinafter "Trust"), which is recorded at the Hampshire County, Massachusetts, Registry of Deeds at Book 6312 Page 189.

8. Pursuant to Article Four of the Trust, during the lifetime of the initial grantors (my husband and myself), we could add or remove property from the trust only through a written instrument.

9. During the period of time after the formation of the trust in which my husband and I were both living, I did not transfer any assets of the trust, including the Belchertown Property, in a signed writing, and based upon information and belief, my husband did not transfer any portion of the Belchertown Property in a signed writing.

10. On or about January 26, 2003, Robert E. Lamitie, my husband and Co-Trustee, passed away. Pursuant to the terms and conditions of the trust, upon the death of one of the initial grantors, the assets of the trust were to be divided and held in two separate trusts known as the "Family Trust."

11. Under Article 10 § of the Trust, certain distributions of the assets of the trust could be made, but only in writing. I made no such requests in writing.

12. Several years ago I became familiar with a James F. Kenney, another defendant in this action, when he called my late husband and I to discuss our property in Belchertown.

13. I have never entered into any written agreement with James F. Kenney regarding the property in question.

14. I never agreed to give James F. Kenney any interest in the Belchertown property for any work he performed with regard to the Belchertown property.

15. I believe I may owe Mr. Kenney some amount of money for the work he did with regard to the Belchertown Property. A specific amount, or how it was to be paid, was never discussed between and Mr. Kenney and me. I never agreed orally or in writing to pay Mr. Kenney any money due and owed for services performed from an interest in or the sale of the "Belchertown Property." No specific dollar amount has ever been claimed to be due and owed by Mr. Kenney.

16. Approximately ten to fifteen years ago I became familiar with Mary Ann Mitchell, the owner of certain real property abutting the "Belchertown Property."

17. Although the "Belchertown Property" and Mary Ann Mitchell's property are adjoining parcels of land, they are not in common ownership. I, as trustee of the Lamitie Revocable Trust, own the Belchertown Property, and I assume Mary Ann Mitchell owns her property.

18. On or about December 9, 2003 J.F. Kenney Corp. filed an application for the approval of a preliminary subdivision plan with the Belchertown Planning Board. This application clearly listed J.F. Kenney Corp. as the "Applicant" and clearly listed Mary Ann Mitchell and me as the "Owner" of our property. Likewise, this application listed Sherman and Woods as the "Engineer or Surveyor."

19. As trustee, I am the sole owner of the "Belchertown Property." Neither the J.F. Kenney Corp. or Sherman and Woods were given any property rights in the Belchertown Property by the inclusion of their names on the Form B. Application.

20. I, as trustee, and Mary Ann Mitchell paid all of the costs and expenses associated with the filing of the Form B.

21. It has never been my intent, nor have I, as trustee, transferred any portion of the Belchertown Property to the J. F. Kenney Corp. or to Mr. Kenney individually or as agent for J. F. Kenney Corp.

22. I have never signed any document transferring any portion of the Belchertown Property to the J.F. Kenney Corp., to Mr. Kenney, or to any other individual or entity, excepting those transfers which are on record at the Hampshire County, Massachusetts, Registry of Deeds.

23. I have never orally transferred any portion of the Belchertown Property to the J.F. Kenney Corp. or to Mr. Kenney or to any other individual or entity.

24. I have never orally, or in writing, transferred any "development rights" of any nature whatsoever to the J. F. Kenney Corp., to Mr. Kenney, or to any other individual or entity.

25. I did not give and have not given the J.F. Kenney Corp., Mr. Kenney Individually, or any other entity or individual a right of first refusal or other option to purchase the Belchertown Property.

26. I did not agree and have not agreed to pay the J.F. Kenney Corp., Mr. Kenney individually, or any other individual or entity for marketing or selling any "building lots" which are developed as a result of the subdivision proposed in the Form B application.

27. To the best of my knowledge, information, and belief, the lawful owner of the Belchertown property is the Lamitie Revocable Trust.

28. The Belchertown Property is not currently listed for sale, nor is it currently for sale.

Subscribed and sworn to, under the pains and penalties of perjury, this 19th day of April, 2004.

_____
Lamitie

Margaret C.

Trustee of the

Lamitie Revocable Trust

STATE OF COLORADO
County of Lake, ss.

Before me personally appeared the above-named Margaret Lamitie on _____ 2004, and acknowledged the foregoing instrument as her free act and deed. Witness my hand and official seal.

_____
Notary Public

commission expires: My Commission Expires 5/9/2005

+++++++++
Sandy DeBruyn, Paralegal
MORSE & SACKS, attorneys
31 Trumbull Road
Northampton, MA 01060
Telephone (413) 584-1287
Facsimile (413) 584-0453

-NOTICE -
Electronic mail sent through the internet is not secure and could be intercepted by a third party. For your protection, avoid sending identifying information, such as Social Security numbers or bank account numbers through the internet.
Further, this transmission may be: (1) subject to the Attorney-Client Privilege, (2) an attorney work product, or (3) strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.

01329                                                2425-195

SEE BOOK 3284 PAGE 38
BOOK 3143 PAGE 156

KNOW ALL MEN BY THESE PRESENTS, That I, VERONICA H. BOULAIS, also known as HAZEL V. BOULAIS, and formerly VERONICA H. McKILLOP

of Northampton                              Hampshire County, Massachusetts
in consideration of   NO CONSIDERATION; NO TAX STAMPS REQUIRED

grant to    MARGARET CORRIDEN McKILLOP LAMITIE

of 96 Mallard Dr., Farmington, Ct.           with quitclaim covenants

the land in Town of Belchertown, Hampshire County, Massachusetts, bounded and described as follows:

Beginning at a stake and stones at the northeast corner of said lot, thence running:

| Direction | Description |
|---|---|
| SOUTHERLY | on land of E. G. Underwood; thence |
| WESTERLY | on land of T. Blodgett and W. Belding to stake and stones; thence |
| SOUTHERLY | on land of said Blodgett to stake and stones, thence |
| SOUTHWESTERLY | on land formerly owned by Worcester to stake and stones; thence |
| NORTHERLY | on land of James King and highway to stake and stones near a hemlock tree; thence |
| EASTERLY | on land of said Worcester and Belding to stake and stones; thence |
| NORTHERLY and EASTERLY | on land of said Belding to the first station, containing 55 acres, more or less, but excluding highway. |

BEING the same premises conveyed to the grantor herein by deed of The Town of Belchertown dated October 5, 1936, recorded in the Hampshire County Registry of Deeds in Book 932, Page 366.

Property Address: Summit Street, Belchertown, Ma.

Executed as a sealed instrument this 30TH day of January 19 84

Veronica H. Boulais

The Commonwealth of Massachusetts

Hampshire   ss.                              January 30, 1984

Then personally appeared the above named   Veronica H. Boulais

and acknowledged the foregoing instrument to be her   free act and deed,

Before me, Stephen M. Rainaud
             Notary Public
Stephen M. Rainaud
My commission expires October 11, 1985

Date FEB 16 1964 at 11 o'clock and 20 minutes A.M. Rec'd, ent'd and exam'd.

**366**             Book 932

QUITCLAIM DEED

Inhabitants of
Belchertown

To

Veronica McKillop


55 Acres
Summit Street
Belchertown

THE COMMONWEALTH OF MASSACHUSETTS

TOWN OF BELCHERTOWN

OFFICE OF THE TREASURER

KNOW ALL MEN BY THESE PRESENTS

that the Town of Belchertown, in consideration of Ninety-eight dollars and thirty-two cents to it paid by Veronica McKillop, of the City of Holyoke in the County of Hampden and State of Massachusetts, the receipt whereof is hereby acknowledged, does hereby remise, release, and forever quitclaim unto the said Veronica McKillop all the right, title, and interest which the said Town of Belchertown acquired by or under a deed made to it, by William E. Shaw, Collector of Taxes for said Town of Belchertown, dated August 24, 1934, and recorded with Hampshire County Registry of Deeds, Book 899, page 185, on the twenty-fourth day of August in the year one thousand nine hundred and thirty-four, in and to the hereinafter described parcel of land in said town.

A certain tract of land containing about fifty-five acres, situated on Summit Street, conveyed to Edward P. McKillop by Michael McKillop Administrator and described in deed as recorded in Book 847, Page 130 Hampshire County Registry of Deeds.

TO HAVE AND TO HOLD the above released premises, with all the privileges and appurtenances to the same belonging, to the said Veronica McKillop, her heirs and assigns to her and their own use and behoof forever.

IN WITNESS WHEREOF the said Town of Belchertown has caused its corporate seal to be hereunto affixed and these presents to be signed, acknowledged, and delivered in its name and behalf by William E. Shaw, its Town Treasurer, hereto duly authorized, this fifth day of October in the year nineteen hundred and thirty-six.

Signed, sealed, and delivered
    in the presence of                Town of Belchertown
    R. S. Morgan                        By    William E. Shaw   Treasurer
                                                   CORPORATE SEAL

THE COMMONWEALTH OF MASSACHUSETTS

Hampshire ss.                                              October 10, 1936

Then personally appeared the above-named William E. Shaw, Treasurer of the Town of Belchertown, and acknowledged the foregoing instrument to be ___the___ free act and deed. of said Town of Belchertown,

Before me, Robert S. Morgan Notary Public

My Commission expires Jan 20, 1939.

*Seventeen words erased*

HAMPSHIRE, ss. May 10, 1938, at 2 o'clock and 45 minutes, P. M.
                                                                                               E: ℳ.

Doc: 992119415 OR /6312/0232  08/02/2001 15:21
Premises Affected: Summit Street Belchertown, MA

KNOW EVERYONE BY THESE PRESENTS, that I, Margaret Corriden McKillop Lamitie, of Leadville, Colorado, for no consideration paid, grant to **Robert E. Lamitie** and **Margaret C. Lamitie**, Trustees of the Lamitie Revocable Trust, dated August 12, 1999, and reaffirmed on July 21, 2001, recorded herewith as Document Number 992119414 both of ~~1820 Four Seasons Boulevard~~, P.O. Box 1206, Leadville, CO 80461, with QUITCLAIM COVENANTS the land in Town of Belchertown, Hampshire County, Massachusetts, bounded and described as follows:  ← 1704 Mt Elbert Dr.

Beginning at a stake and stones at the northeast corner of said lot, thence running:

(changed above before me this 21st day of July 2001.
Katherine Sander
KATHERINE Sander
Commission Expires 8/8/01)

| | |
|---|---|
| SOUTHERLY | on land of E.G. Underwood; thence |
| WESTERLY | on land of T. Blodgett and W. Belding to stake and stones; thence |
| SOUTHERLY | on land of said Blodgett to stake and stones, thence |
| SOUTHWESTERLY | on land formerly owned by Worcester to stake and stones; thence |
| NORTHERLY | on land of James King and highway to stake and stones near a hemlock tree; thence |
| EASTERLY | on land of said Worcester and Belding to stake and stones; thence |
| NORTHERLY and EASTERLY | on land of said Belding to the first station, containing 55 acres, more or less, but excluding highway. |

BEING the same premises conveyed to the grantor herein by deed of Veronica H. Boulais dated January 30, 1984, recorded in the Hampshire County Registry of Deeds in Book 2425, Page 195.

Executed as a sealed instrument this 21st day of July, 2001.

Margaret Corriden McKillop Lamitie
MARGARET CORRIDEN MCKILLOP LAMITIE

STATE OF COLORADO
County of Lake, ss.

Before me personally appeared the above-named **Margaret Corriden McKillop Lamitie** on July 21st, 2001, and acknowledged the foregoing instrument as her free act and deed. Witness my hand and official seal.

Katherine Sander
KATHERINE SANDER, Notary Public
My commission expires: 08/08/2001

ATTEST: HAMPSHIRE, Marianne L. Donohue, REGISTER
MARIANNE L. DONOHUE

Doc: 992119A14 OR /6312/0189   08/02/2001 15:20

## THE LAMITIE REVOCABLE TRUST

### Reaffirmation of Trust

Pursuant to the provision of Article 4, Section 2(d) of The Lamitie Revocable Trust dated August 12, 1999, of which we, **Robert E. Lamitie** and **Margaret C. Lamitie** are the Grantors and the initial Trustees, the Grantors retained the right to amend or revoke the trust in whole or in part. We now reaffirm all of the provisions of said trust without change or amendment. A true copy of said trust is attached hereto.

IN WITNESS WHEREOF, we set our hands and seals this 21st day of July, 2001.

_____
ROBERT E. LAMITIE

_____
MARGARET C. LAMITIE

STATE OF COLORADO   )
                    )ss.
COUNTY OF LAKE      )

The foregoing reaffirmation of trust was acknowledged before me on July 21st, 2001, by **Robert E. Lamitie** and **Margaret C. Lamitie** as Grantors. Witness my hand and official seal.

_____
KATHERINE SANDER, Notary Public
My commission expires: 08/08/01

Doc: 992119414 OR /6312/0189   08/02/2001 15:20

## THE LAMITIE REVOCABLE TRUST

### Reaffirmation of Trust

Pursuant to the provision of Article 4, Section 2(d) of The Lamitie Revocable Trust dated August 12, 1999, of which we, **Robert E. Lamitie** and **Margaret C. Lamitie** are the Grantors and the initial Trustees, the Grantors retained the right to amend or revoke the trust in whole or in part. We now reaffirm all of the provisions of said trust without change or amendment. A true copy of said trust is attached hereto.

IN WITNESS WHEREOF, we set our hands and seals this 21st day of July, 2001.

_____
ROBERT E. LAMITIE

_____
MARGARET C. LAMITIE


STATE OF COLORADO  )
                   )ss.
COUNTY OF LAKE     )

The foregoing reaffirmation of trust was acknowledged before me on July 21st, 2001, by **Robert E. Lamitie** and **Margaret C. Lamitie** as Grantors. Witness my hand and official seal.

_____
KATHERINE SANDER, Notary Public
My commission expires: 08/08/01

Doc: 992119414 OR /6312/0190    08/02/2001 15:20

# THE
# LAMITIE REVOCABLE TRUST

Prepared by

Gordon E. Schieman
Stewart & Phillips, PC
7700 East Arapahoe Road, Suite 100
Englewood, CO 80112

Telephone: (303) 741-2400

Doc: 99211914 OR /6312/0191    08/02/2001 15:20

# Table of Contents
# Lamitie Revocable Trust

ARTICLE ONE ................. CREATION AND FUNDING OF OUR TRUST

ARTICLE TWO ................ OURSELVES AND OUR FAMILY

ARTICLE THREE .............. THE TRUSTEES

ARTICLE FOUR ............... ADMINISTRATION OF THIS TRUST DURING OUR LIVES

ARTICLE FIVE ................ ADMINISTRATION OF THIS TRUST UPON THE DEATH
                              OF A GRANTOR

ARTICLE SIX .................. DISTRIBUTION OF OUR TANGIBLE PERSONAL PROPERTY
                              AND SPECIFIC DISTRIBUTIONS

ARTICLE SEVEN .............. CREATION OF TRUSTS FOR THE DECEASED GRANTOR AND THE
                              SURVIVING GRANTOR

ARTICLE EIGHT .............. ADMINISTRATION OF THE SURVIVING GRANTOR'S TRUST

ARTICLE NINE ................ ADMINISTRATION OF THE DECEASED GRANTOR'S TRUST

ARTICLE TEN ................. ADMINISTRATION OF THE FAMILY TRUST

ARTICLE ELEVEN ............ DISTRIBUTION OF OUR TRUST AT THE
                              DEATH OF BOTH OF US

ARTICLE TWELVE ........... MINOR AND DISABLED BENEFICIARIES

ARTICLE THIRTEEN ......... INSURANCE POLICIES AND RETIREMENT PLANS

ARTICLE FOURTEEN ........ INSTRUCTIONS WITH REGARD TO THE TRUSTEESHIP

ARTICLE FIFTEEN ........... TRUSTEE'S POWERS

ARTICLE SIXTEEN ........... DEFINITIONS AND GENERAL PROVISIONS

EXECUTION OF THE TRUST AGREEMENT

Doc: 9921194l4 OR /6312/0192   08/02/2001 15:20

# Lamitie Revocable Trust

## Article One
## Creation and Funding of Our Trust

**Section 1.**     **Our Trust**

We are husband and wife. Together we are creating this Living Trust, dated August 12, 1999, between:

> Robert E. Lamitie, the husband Grantor,
> Margaret C. Lamitie, the wife Grantor,

and the following initial Trustees:

> Robert E. Lamitie, and
> Margaret C. Lamitie

Our trust is a joint revocable living trust that contains our instructions for our own well-being and that of our loved ones. All references to "our trust" or "trust," unless otherwise stated, shall refer to this Living Trust and the trusts created in it. All references to "Trustee" shall refer to our initial Trustee or Trustees, or their successor or successors in trust under this trust and all trusts created by this trust.

When the term "Grantor" is used in our trust, it shall have the same legal meaning as "Settlor," "Trustor," or any other term referring to the maker of a trust.

Notwithstanding anything in our trust to the contrary, when we are serving as Trustees under our trust, either of us may act for and conduct business on behalf of our trust as a Trustee without the consent of any other Trustee.

**Section 2.**     **The Name of Our Trust**

Our trust shall be known as the:

> **Lamitie Revocable Trust, dated August 12, 1999**

Where required by law, for purposes of beneficiary designations and transfers directly to our trust, our trust shall be referred to as:

> Robert E. Lamitie and Margaret C. Lamitie, Trustees, or their successors in trust, under Lamitie Revocable Trust, dated August 12, 1999, and any amendments thereto.

Doc: 9921119414 OR /6312/0193   08/02/2001 15:20

After the death of one of us, this trust will subdivide into two or more trusts. At that time, the Trustee of each trust so created may rename that particular trust in the interest of clarity. Such renaming shall not in any way be construed as eliminating the application of any of the instructions, terms, and conditions contained in this document on such trusts.

### Section 3.     Purpose

In creating this trust agreement, our purpose is to arrange our assets to accomplish the following goals:

   a. **Control**
      i. Maintain as much control over our assets as we can while we are alive and physically able;
      ii. Provide for control by person(s) of our choice in the event of mental incapacity;
      iii. Exercise what we consider to be the appropriate level of control over our assets after we are gone for the benefit of our family.

   b. **Take Care of Ourselves and Our Loved Ones**

   c. **Dispose of Our Assets as We Wish**

   d. **Save as Much as Possible in Taxes, Costs, Fees, and Professional Expenses in Accomplishing the Above Goals**

We instruct that all interpretations, discretions, and constructions of the terms and conditions contained in this trust agreement be made in a manner which would accomplish the above goals in the priority listed above.

### Section 4.     Initial Funding

We initially hereby transfer, assign, and convey all of our right, title, and interest in and to our residence which is community property, to the Trustee to hold and administer for our benefit and for the benefit of our beneficiaries pursuant to the terms of this trust.

   a. **Reliance by Third Parties**
   Upon presentation by the Trustee of this Article of our trust and a separate Affidavit of Trust stating the name and address of the Trustee, affirming that our trust is in full force and effect, and containing any pertinent provisions of our trust, all third parties shall rely on this transfer and follow all of the Trustee's instructions without risk of incurring any liability to us, the Trustee, or our beneficiaries.

Doc: 9921194140 OR /6312/0194    08/02/2001 15:20

## Article Two
## Ourselves and Our Family

### Section 1. Purpose

The purpose of this Article is to completely identify ourselves and our natural heirs. Any error or omission regarding names, spellings, dates are to be regard as inadvertent and not controlling. Any omission, however, of an heir, or a claimant to be an heir, is to be considered as intentional.

### Section 2. Ourselves

I, **Robert E. Lamitie**, was born May 2, 1926, in Winthrop, Massachusetts, as Robert E. Lamitie. I have also been known as Bob Lamitie.

I, **Margaret C. Lamitie**, was born August 20, 1927, in South Hadley, Massachusetts, as Margaret Corriden McKillop.

We were married January 18, 1958, in Holyoke, Massachusetts.

### Section 3. Our Family

Our Children:

| Name | Birthdate |
|---|---|
| **Robert Thomas Lamitie** | October 15, 1959 |
| **Sarah McKillop Lamitie** | April 1, 1961 |
| **Carrie Margaret Lamitie** | January 13, 1963 |
| **Hannah Mary Lamitie** | September 30, 1964 |

All references to our children in this agreement are to these children.

Doc: 9921194M OR /6312/0195    08/02/2001 15:20

# Article Three
# The Trustees

**Section 1.**     **Purpose**

The purpose of this article is to identify the current trustees, and name the person or persons whom we wish to serve as trustees of this trust when we cannot serve ourselves.

**Section 2.**     **Current Trustees**

Both **Robert E. Lamitie** and **Margaret C. Lamitie** are current Trustees of this Trust.

Notwithstanding anything in our trust to the contrary, when either of us is serving as Trustee under this trust, either of us may act for or conduct business on behalf of this trust as a Trustee without the consent of any other Trustee.

**Section 3.**     **The Resignation of a Trustee**

Any Trustee may resign by giving thirty days' written notice to each of us or to our respective legal representatives. If either of us is not living, the notice shall be delivered to the Trustee and to all of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income from any trust created under this agreement.

If a beneficiary is a minor or is legally incapacitated, the notice shall be delivered to that beneficiary's guardian or other legal representative.

**Section 4.**     **The Removal of a Trustee**

Any Trustee may be removed as follows:

**a.     Removal by Us**
We reserve the right to remove any Trustee at any time, but only if we both agree.

**b.     Removal by One of Us**
During any period that one of us is disabled and the other Grantor is living and is not disabled, the surviving nondisabled Grantor may remove any Trustee.

**c.     Removal by Beneficiaries**
A majority of the current income beneficiaries of any irrevocable trust under this document shall have the right to remove a trustee, effective upon thirty (30) days written notice to such trustees, in accordance with the following:
    1. a corporate trustee may be removed without cause, provided a corporate trustee is appointed as successor; and

LAMITIE REVOCABLE TRUST

Doc: 992119414 OR /6312/0196    08/02/2001 15:20

    2. an individual acting as a trustee may be removed, with cause (as determined by the law of the situs of administration).

**d. Notice of Removal**

Notice of removal shall be effective when made in writing by either personally delivering notice to the Trustee and securing a written receipt, or mailing notice in the United States mail to the last known address of the Trustee by certified mail, return receipt requested.

## Section 5.     Replacement of Trustees

Whenever a Trustee is removed, dies, resigns, becomes legally incapacitated, or is otherwise unable or unwilling to serve, that Trustee shall be replaced as follows:

**a. The Death or Disability of a Trustee While We Are Serving as Trustees**

We may serve as the only Trustees or we may name any number of Trustees to serve with us. If any of these other Trustees subsequently die, resign, become legally incapacitated, or are otherwise unable or unwilling to serve as a Trustee, we may or may not fill the vacancy, as we both agree.

**b. Trustee on the death of or during such time as Robert E. Lamitie is disabled**

Upon the disability or death of Robert E. Lamitie, if **Margaret C. Lamitie** is then serving as a Trustee, she shall continue to serve as Trustee.

If Margaret C. Lamitie is unwilling or unable to serve, or cannot continue to serve for any other reason, then **Carrie M. Lamitie** shall be named as replacement Trustee.

**c. Trustee on the death of or during such time as Margaret C. Lamitie is disabled**

Upon the disability or death of Margaret C. Lamitie, if **Robert E. Lamitie** is then serving as a Trustee, he shall continue to serve as Trustee.

If Robert E. Lamitie is unwilling or unable to serve, or cannot continue to serve for any other reason, then **Carrie M. Lamitie** shall be named as replacement Trustee.

**d. Successor Trustees**

A successor death Trustee shall be replaced upon death, resignation, or legal disability and the next successor death Trustee in the order named above shall serve and carry out the terms and provisions of our trust.

A Trustee may be listed more than once in this Section or an initial Trustee may also be named as a disability Trustee or a Trustee who will serve at death. Naming a Trustee more than once is done as a convenience only and is not to be construed as a termination of that Trustee's trusteeship.

Doc: 9921194140 OR /6312/0197    08/02/2001 15:20

**e.   Unfilled Trusteeship**

Any acting trustee may designate a successor or co trustee. In the event no Trustees are available, a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income under this agreement shall name a competent professional, individual or corporate, to serve as Trustee.

If a majority of the beneficiaries then eligible to receive mandatory or discretionary distributions of net income under this agreement cannot agree on a successor Trustee, any beneficiary can petition a court of competent jurisdiction, ex parte, to designate a competent professional, individual or corporate, to serve as Trustee.

The court that designates the successor Trustee shall not acquire any jurisdiction over any trust created under this agreement, except to the extent necessary to name a successor Trustee.

**f.   Professional and Corporate Fiduciaries**

Any individual professional named as replacement trustee must be a licensed professional (such as an attorney or certified public accountant) regularly engaged in representing individuals in financial or legal matters. Any corporate fiduciary named in this trust agreement or appointed by a court of competent jurisdiction as a Trustee must be a bank or trust company situated in the United States having trust powers under applicable federal or state law.

**Section 6.          Powers and Liabilities of Successor Trustee**

Any successor Trustee, whether corporate or individual, shall have all of the rights, powers, and privileges, and be subject to all of the obligations and duties, both discretionary and ministerial, as given to the original Trustees.

Any successor Trustee shall be subject to any restrictions imposed on the original Trustees. No successor Trustee shall be required to examine the accounts, records, and acts of any previous Trustees.

No successor Trustee shall in any way be responsible for any act or omission to act on the part of any previous Trustees.

Doc: 9921194414 OR /6312/0198    08/02/2001 15:20

# Article Four
# Administration of This Trust During Our Lives

**Section 1.**    **Purpose**

The purpose of this Article is to set forth the rules and operating procedures for this trust during such time as either of us are alive.

**Section 2.**    **Our Lifetime Powers**

While we are both living, we shall have the following powers:

**a. Control and Direct Payments**
The Trustee shall distribute or retain the principal and net income of the community estate, if any, as we may direct from time to time. The Trustee shall distribute or retain the principal and net income of the common property estate, if any, as we may direct from time to time.

Absent directions from us, the Trustee shall distribute the trust income from the common and/or community estate, if any, at least monthly and shall distribute the trust income from a Grantor's separate estate to that Grantor at least monthly.

**b. Investment Decisions**
During our lifetime, except for any period of our incapacity, we individually reserve the right to specifically approve or disapprove each and every trust investment, purchase, or sale before it is made. The Trustee is relieved from all liability for loss which may result from the purchase or sale of trust property which has been directed by either of us.

If we have established a working relationship with a specific financial professional prior to our death, and have not expressed dissatisfaction with that individual or firm, the Trustee should continue to use that person or firm unless, in the sole discretion of the Trustee, that professional person or firm is not performing adequately either in returns or service. Replacement of financial professionals may be at the sole discretion of the Trustee acting in the best interests of all beneficiaries.

**c. Add or Remove Trust Property**
We shall have the absolute right, either individually or jointly, to add to the trust property at any time.

Either Grantor shall also have the absolute right to remove his or her own separate property, his or her share of any community property, or his or her share of common property in whole or in part, from the trust at any time. All of these rights shall be exercised in writing.

---

LAMITIE REVOCABLE TRUST

4

Doc: 9921119414 OR /6312/0199    08/02/2001 15:20

our respective interests in the community estate, if any, as we shall request in writing at any time.

**d. Right to Amend or Revoke the Trust**
We shall have the absolute right to amend or revoke our trust, in whole or in part, at any time. Any amendment or revocation must be in writing, signed by both of us, and delivered to the Trustee.

This right to amend or revoke is personal to us and may not be exercised by a legal representative of either of us. After the death of one of us, any trust created by the terms of this document shall not be subject to amendment or revocation except according to the terms of such trust or trusts.

### Section 3.    The Definition of Our Disability

Our disability, for purposes of this agreement, shall be defined as follows:

**a.    The Opinion of Two Licensed Physicians**
A Grantor shall be deemed disabled during any period when, in the opinion of two licensed physicians, a Grantor is incapacitated or disabled because of illness, age, or any other cause which results in the Grantor's inability to effectively manage his or her property or financial affairs.

**b.    Court Determination**
A Grantor shall also be deemed to be disabled upon the determination of a court of competent jurisdiction that a Grantor is incompetent, incapacitated, or otherwise legally unable to effectively manage his or her property or financial affairs.

**c.    Disappearance or Absence**
A Grantor shall be deemed to be disabled upon the unexplained disappearance or absence of a Grantor, or if a Grantor is being detained under duress where the Grantor is unable to effectively manage his or her property or financial affairs.

### Section 4.    Procedural Guidelines for Our Disability

During any period of time when one or both of us are disabled, the Trustee shall apply the trust property, including its income, exclusively for our benefit and for our valid obligations by observing the following procedural guidelines:

**a.    The Disability of One or Both of Us**
The Trustee shall provide as much of the principal and net income of the trust as is necessary or advisable, in its sole and absolute discretion, for the health, support, maintenance, and general welfare of the disabled Grantor.

---

LAMITIE REVOCABLE TRUST
ARTICLE 4 - PAGE 2

Doc: 9921194l4 OR /6312/0200   08/02/2001 15:20

**b. Provide for the Other Grantor and Other Dependents**

During any period of time that one of us is disabled, the Trustee, in its sole and absolute discretion, shall provide as much of the principal and net income of the trust, as is necessary for the education, health, maintenance, and support of the other Grantor, and any other persons deemed by the Trustee to be dependent on the disabled Grantor.

**c. Provide for Our Obligations**

The Trustee shall provide as much of the principal and net income of our trust as the Trustee, in its sole and absolute discretion, deems advisable for the payment of any valid obligations as confirmed by the Trustee.

The Trustee shall provide as much of the principal and net income of our trust as the Trustee deems advisable for the payment of insurance premiums on policies owned by one of us, either directly or beneficially, or our trust. The Trustee shall pay premiums for any life insurance policies that are the sole and separate property of one of us from that Grantor's sole and separate property.

**d. Procedural Guidelines**

In making distributions under this Section, the Trustee shall, at all times, give consideration to the needs of the Grantors.

## Section 5.     Undistributed Net Income

Any net income which is not distributed under this Article shall be accumulated and added to principal.

Doc: 992119414 OR /6312/0201    08/02/2001 15:20

# Article Five
# Administration Upon the Death of a Grantor

## Section 1.    Purpose

The purpose of this Article is to insure that upon the death of either of us, our just debts, our final costs, taxes, and our funeral expenses will be paid as they would had we died owning our assets instead of the trust owning the assets.

## Section 2.    Payment of Expenses, Claims, and Taxes

Upon the death of each one of us, the Trustee is authorized, but not directed, to pay the following:

1. Expenses of the last illness, funeral, and burial, including memorials of all types and memorial services of such kind as the Trustee in its sole discretion shall approve;
2. Legally enforceable claims against the deceased or the estate;
3. Expenses with regard to the administration of the estate;
4. Federal estate tax, applicable state inheritance or estate taxes, or any other taxes occasioned by death;
5. Statutory or court-ordered allowances for qualifying family members.

The payments authorized under this Section are discretionary, and no claims or right to payment by third parties may be enforced against our trust by virtue of such discretionary authority.

The Trustee shall be indemnified from the trust property for any damages sustained by the Trustee as a result of its exercising, in good faith, the authority granted it under this Section.

## Section 3.    Coordination with the Personal Representative

This Section shall be utilized to help facilitate the coordination between the personal representative of the Deceased Grantor's probate estate, if any, and the Trustee with respect to any property, whether owned solely or held as common and/or community property, to the extent of the Deceased Grantor's interest in such property owned by the Grantor outside of this trust agreement on the Grantor's death.

### a. Authorized Payments

The Trustee, in its sole and absolute discretion, may elect to make the payments authorized under this Article either directly to the appropriate persons or institutions or to the personal representative of the Deceased Grantor's probate estate.

The Trustee may rely upon the written statements of the Deceased Grantor's personal representative as to all material facts relating to these payments; the Trustee shall not have any duty to see to the application of such payments.

LAMITIE REVOCABLE TRUST