UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30060

CHESWELL, INC., )
    Plaintiff )
  ) PLAINTIFF'S OPPOSITION TO
vs. ) DEFENDANT MARGARET
  ) C. LAMITIE'S MOTION FOR
JAMES F. KENNEY, et al., ) RELIEF FROM REAL ESTATE
    Defendant ) ATTACHMENT

    The plaintiff Cheswell, Inc., pursuant to Fed. R. Civ. P. 64, and Local Rule 7.1[1], hereby opposes the Motion of the Defendant Margaret C. Lamitie, Trustee of the Lamitie Revocable Trust, for Relief from Real Estate Attachment. The grounds for this opposition are that Margaret C. Lamitie, Trustee of the Lamitie Revocable Trust (hereinafter "Mrs. Lamitie") has not shown that injunctive relief should not have been entered. In fact, the memorandum and affidavit filed by Mrs. Lamitie confirms that she owes a debt to either Mr. Kenney or J. F. Kenney Corporation for services rendered in connection with the development of a 49 lot subdivision in Belchertown. This debt is properly the subject of a claim of the plaintiff to reach and apply. Therefore, the defendant's motion for relief from the real estate attachment should be denied. Alternatively, the court should consider modifying the injunctive relief to reflect that the debt Mrs. Lamitie owes to Mr. Kenney or his corporation should be paid to Cheswell

---

[1] The defendant has filed a certificate that her counsel has contacted counsel for the plaintiff "in a good faith attempt to resolve or narrow the issues" set forth in her motion. See Local Rule 7.1(A)(2). No such contact was made with the undersigned, although other counsel telephoned the undersigned to notify her that a motion for summary judgment would be filed.

and that the Belchertown property may not be sold, transferred, mortgaged or encumbered until the debt to Cheswell is paid.

## II.    ARGUMENT[2]

The affidavit of Mrs. Lamitie is insufficient to challenge the finding upon which the issuance of the ex parte order rested. The claims against Mr. and Mrs. Kenney and J. F. Kenney Corporation are that they have engaged in a systematic effort to divest Mr. Kenney of assets that would be available to satisfy a judgment in Civil Action No. 02-30115-KPN (hereinafter "Cheswell I"). The affidavits previously filed in the instant matter demonstrate that Mr. Kenney arranged for several transfers of property almost at the exact hour when this court heard counsel on a motion of real estate attachment in Cheswell I. Mrs. Lamitie does not contradict these facts.

Mrs. Lamitie in her motion and affidavit denies that she has any agreement to sell or transfer any portion of the Belchertown property to Mr. Kenney. However, she acknowledges that she "may owe Mr. Kenney some amount of money for the work he did with regard" to the property. Lamitie Aff. at ¶15. The services provided to or for the benefit of Mrs. Lamitie and her neighbor Mrs. Mitchell by J. F. Kenney Corporation include filing an application for preliminary approval of a subdivision plan and obtaining an order of conditions for the subdivision. Discovery may reveal other services performed by J. F. Kenney Corporation. These tasks require an expertise and sophistication that Mrs. Lamitie does not have and that the corporation has provided in furtherance

---

[2] The plaintiff adopts by reference herein the arguments made in opposition to the motion of the defendant Mary Ann Mitchell to dissolve the real estate attachment entered with respect to her property.

of the development of the subdivision project. Mrs. Lamitie agrees that she owes Mr. Kenney some amount of money for this work. This is precisely the type of debt that is the subject of an action to reach and apply under Mass. Gen. Laws c. 214, §3. Therefore, the motion for injunctive relief was properly allowed.

The analysis in *In Re Osgood*, 203 B. R. 865, 869, 1997 Bankr. LEXIS 15 at **2 (D. Mass. 1997), a copy of which is attached hereto as Attachment A, supports the conclusion that a reach and apply action is appropriate and that the plaintiff must be granted injunctive relief to perfect an interest in the debt owed Mr. Kenney or J. F. Kenney Corporation. The court in *Osgood* observed that

> statutory creditors' actions to reach and apply are governed by M.G.L. c. 214, §3(6). Under the statute, the plaintiff must file a complaint against both the principal defendant and any third party who possesses property of, or owes a debt to, the principal defendant. Additionally, the plaintiff must seek an injunction restraining the debtor or a third party from disposing of the property that the plaintiff intends to reach and apply in satisfaction of its claim.

The fact that Mrs. Lamitie acknowledges what the documents have previously demonstrated, namely that J. F. Kenney Corporation is managing the development of the subdivision, and that Mr. Kenney or the corporation is owed for services in this regard, supports the court's entry of an attachment.[3]

Following the reasoning of *Osgood* and in light of the affidavit filed by Mrs. Lamitie, however, the court may want to consider amending the injunctive relief to reflect the nature of the obligation owed to Mr. Kenney or J. F. Kenney Corporation. In *Osgood*, the obligation owed the principal defendant consisted of

---

[3] To the extent that the Verified Complaint sought relief under Mass. Gen. Laws c. 214, §3(8) and the affidavits filed by the defendants suggest that an action under §3(6) is more appropriate, the plaintiff will move to amend the complaint to add or substitute a claim to reach and apply under §3(6).

3

payments on a bond. 203 B. R. at 867, 1997 Bankr. LEXIS 15, **3-4. The court held that the injunctive relief required in such a case is an injunction restraining the debtor from making payments to the principal defendant and an order that the proceeds of appropriate assets be applied to payment of the debt. *See Osgood*, 203 B. R. at 871, 1997 Bankr. LEXIS 15, at **20. Therefore, the court may want to enter an order modifying the attachment so that it recites the following: (a) that Mrs. Lamitie owes J. F. Kenney Corporation or Mr. Kenney a debt in an amount to be determined by the court; (b) that Mrs. Lamitie is prohibited from making any payments on the debt to J. F. Kenney Corporation or Mr. Kenney but must make the payments to Cheswell, Inc.; and (c) that the proceeds of the sale of the Belchertown Property must be applied to payment of the debt.

### III.   CONCLUSION

For all the foregoing reasons, the Motion of the Defendant Margaret C. Lamitie, Trustee of the Lamitie Revocable Trust, For Relief from Real Estate Attachment should be denied and the court should modify the injunctive relief previously granted pursuant to the requirements of Mass. Gen. Laws c. 214, §3(6).

> The Plaintiff
> CHESWELL, INC.
> By Its Attorneys:
>
> *Felicity Hardee*
> Felicity Hardee, BBO #221230
> Bulkley, Richardson and Gelinas, LLP
> 1500 Main Street
> Springfield, MA 01115
> (413) 272-6283

Dated: April 22, 2004

# EXHIBIT A

Case 3:04-cv-30060-MAP    Document 33    Filed 04/22/2004    Page 5 of 13

LEXSEE 203 B. R. 865

In re BENJAMIN C. OSGOOD, Debtor; JILLIAN K. AYLWARD, CHAPTER 7
TRUSTEE, Plaintiff v. LAWRENCE SAVINGS BANK, Defendant

Chapter 7, Case No. 93-18838-JNF, Adv. P. 96-1032

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF
MASSACHUSETTS

203 B.R. 865; 1997 Bankr. LEXIS 15

January 9, 1997, Decided
January 9, 1997, Opinion Filed

**DISPOSITION:** [**1] Plaintiff's Motion for Summary Judgment granted and the Defendant's Motion for Summary Judgment denied.

**COUNSEL:** William R. Moorman, Esq., Craig & Macauley, Boston, MA, for Pltf/Trustee.

Sarah N. A. Camougis, Edwards & Angele, Boston, MA, for Defendant.

**JUDGES:** Joan N. Feeney, United States Bankruptcy Judge

**OPINIONBY:** Joan N. Feeney

**OPINION:**

[*866] MEMORANDUM

**I. INTRODUCTION**

The matters before the Court are 1) the "Motion for Summary Judgment Submitted by Defendant Lawrence Savings Bank" and 2) the "Opposition of Jillian K. Aylward, Chapter 7 Trustee to Motion for Summary Judgment Submitted by Defendant Lawrence Savings Bank and Cross Motion for Summary Judgment." On September 19, 1996, the Court held a hearing and took the matter under advisement. On September 30, 1996, counsel for the defendant submitted a copy of a Mortgage, Security and Trust Agreement (the "Trust Agreement") dated December 1, 1985 which the Court requested at the hearing.

The material facts necessary to resolve these matters are not disputed. Based upon the "Joint Statement of Fact in Support of Motion for Summary Judgment" which the parties filed on July 24, 1996, and the Trust Agreement, the Court makes the following [**2] findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

**II. FACTS**

On October 1, 1993, an involuntary Chapter 7 petition was filed against Benjamin C. Osgood ("Osgood" or the "Debtor"). On December 21, 1993, an order for relief was entered. On Schedule B-Personal Property, the Debtor listed as an asset an industrial revenue bond (the "bond") with a current market value of $ 85,622.00. On Schedule D-Creditors Holding Secured Claims, the Debtor listed Lawrence Savings Bank (the "Bank") as a secured creditor. He described the debt owed to the Bank as an "Attachment/Restraining Order 5/5/93 Secured by IRB" in the amount of $ 132,687.00. According to his Statement of Financial Affairs, in 1993, the Debtor received income from the bond in the amount of $ 3,335.55. On August 31, 1995, the Bank filed an Amended Proof of Claim in the sum of $ 140,613.67. The Bank indicated that approximately $ 80,613.67 of its claim was unsecured and $ 60,000.00 was secured by "attachments on real estate/pers. property."

On January 19, 1996, the Trustee brought this adversary proceeding against the Bank, seeking (1) a declaratory judgment that the Bank has no interest [**3] in the bond or, alternatively, if the Bank holds a claim secured by the bond, its interest is not a secured claim pursuant to *11 U.S.C. § 506*(a); (2) avoidance of any lien obtained by the Bank pursuant to *11 U.S.C. § 544*(a); (3) recovery of any rights and interests transferred to the

Case 3:04-cv-30060-MAP    Document 33    Filed 04/22/2004    Page 7 of 13

Page 2
203 B.R. 865, *; 1997 Bankr. LEXIS 15, **

Bank pursuant to *11 U.S.C. § 550*; and (4) disallowance of the Bank's claims pursuant to *11 U.S.C. § 502*(d). On February 21, 1996, the Bank filed an Answer and Counterclaim. Through its counterclaim, the Bank sought the following relief: (1) a declaration that it holds a lien against the bond; (2) turnover of the bond as well as all principal and interest payments due under the bond; and (3) an accounting of principal and/or interest payments received by the Trustee.

The bond that is the subject of this adversary proceeding was one of three bonds issued [*867] on December 1, 1985 by the Town of North Andover, acting by and through its Industrial Development Financing Authority (the "Issuer"), as part of a $ 2,000,000 issue. n1 The bond purchased by the Debtor, numbered "R3" and in registered form, was in the face amount of $ 100,000. It was subordinated to a bond numbered "R1" which was issued on the same [**4] date to Union National Bank ("Union") in the face amount of $ 1,800,000. Principal and interest were to be paid monthly to the Debtor for twenty years. Under the Trust Agreement, Union became trustee of several trusts created for the payment of the bonds. State Street Bank and Trust Company ("State Street Bank") succeeded Union as trustee.

> n1 The bonds were authorized and issued pursuant to M.G.L. c. 40D for the purpose of financing a project on property owned by John C. Bianchi, trustee of the Bianchi Realty Trust (the "Borrower"), and to be leased to Eastprint, Inc. (the "Lessee"). As such, the bonds are not general obligations of the Town of North Andover. Rather, as the bond instrument itself provides, principal and interest are to be paid "SOLELY FROM THE REVENUES AND FUNDS PLEDGED FOR THEIR PAYMENT UNDER AND PURSUANT TO THE TRUST AGREEMENT" (emphasis in original). On the same date that the Trust Agreement was signed, the Borrower entered into both a Loan Agreement with the Issuer and the Lessee as well as a separate Lease Agreement with the Lessee.

[**5]

In 1988, the Debtor and other borrowers brought an action against the Bank in Massachusetts Superior Court, alleging lender liability claims in connection with certain promissory notes given to the Bank. The Bank counterclaimed and prevailed, obtaining summary judgment on all counts in 1991. After conducting foreclosure sales on the properties securing the promissory notes, the Bank, on August 20, 1992, filed an Amended and Supplemental Counterclaim to collect deficiencies. Through counts three and four, it sought judgment against the Debtor in the amount of $ 132,687.67.

Approximately eight months later, on April 13, 1993, the Bank filed in the state court action a pleading entitled "Motion to Reach and Apply by Preliminary Injunction in the Form of an Equitable Attachment" (the "Motion"). In paragraph two of the Motion, the Bank citing M.G.L. c. 214, § 3(6), stated that it "is a creditor of the defendant Osgood, and as such may reach and apply funds of the defendant in payment of the debt" (emphasis in original). The Bank attached to its Motion an Affidavit of James D. McGinley (the "Affidavit"), which listed various ownership interests of the Debtor, including the bond. The [**6] Affidavit stated that "the Bank, without approval of its Motion ... has no security for any judgment that it may obtain against" the Debtor. On May 5, 1993, the Superior Court entered a Preliminary Injunction Order (the "injunction"), which provided in part the following:

> ... the Bank's Motion to Reach and Apply by Preliminary Injunction in the Form of an Equitable Attachment is ALLOWED and its [sic] hereby ORDERED:
>
> (a) that defendant Benjamin C. Osgood, his agents, employees, successors and assigns are restrained and enjoined from selling, assigning, transferring, alienating, conveying, mortgaging, hypothecating, or otherwise encumbering or disposing of any rights he has to payments under his beneficial interest in the Bianchi Realty Trust, up to the value of $ 132,687.67.
>
> (b) that defendant Benjamin C. Osgood, his agents, employees, successors and assigns are restrained and enjoined from selling, assigning, transferring, alienating, conveying, mortgaging, hypothecating, or otherwise encumbering or disposing of any rights he has under a certain Industrial Revenue Bond.

The Bank did not obtain a judgment with respect to its Amended and Supplemental Counterclaim [**7] for collection of deficiencies because the state court proceedings were stayed upon the filing of the involuntary petition against the Debtor.

The Bank never took possession of the bond. n2 In fact, State Street Bank continued to make principal and interest payments to the Debtor. It has made post-petition

Case 3:04-cv-30060-MAP   Document 33   Filed 04/22/2004   Page 8 of 13

Page 3

203 B.R. 865, *; 1997 Bankr. LEXIS 15, **

principal [*868] and interest payments to the Chapter 7 Trustee.

> n2 At the hearing, counsel to the Trustee stated that the Debtor claims to have given the bond instrument to the Trustee. However, the Trustee denies that she received the bond instrument. In any event, it is undisputed that the Bank never possessed or controlled the bond.

### III. THE POSITIONS OF THE PARTIES

#### A. The Chapter 7 Trustee

The Trustee first argues that the bond is a certificated security within the meaning of Article 8 of the Uniform Commercial Code. According to the Trustee, in order for the Bank to have attached the Debtor's interest in the bond, it would have been required to seize possession of the bond instrument pursuant [**8] to M.G.L. c. 106, § 8-317(1).

Alternatively, the Trustee contends that the injunction that the Bank obtained was insufficient to constitute an equitable lien against the bond because the injunction restrained only the Debtor. In the Trustee's view, in addition to seeking a restraining order, the Bank should have commenced a separate civil action to reach and apply against State Street Bank in order to obtain the right to payment under the bond. At the September 19th hearing, counsel to the Trustee argued that an injunction alone might have been sufficient to give rise to an equitable lien if the order enjoined State Street Bank, the trustee, from paying the Debtor.

The Trustee further argues that, even assuming that the Bank acquired an equitable lien against the bond, she can avoid its lien pursuant to *11 U.S.C. § 544*, n3 unless the Bank perfected its lien. The Trustee contends that, because the bond is a negotiable instrument, the Bank could perfect its lien only by taking possession of the bond. Therefore, because the Bank did not take possession of the bond, the Trustee's status as a hypothetical lien creditor gives her priority over the Bank's unperfected security interest. [**9]

> n3 Section 544 provides in relevant part the following:
>
> > (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
> >
> > > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists...
>
> *11 U.S.C. § 544*(a).

#### B. The Bank

The Bank takes the position that the bond is neither "property of the estate" nor "an obligation of the issuer" and, therefore, does not constitute a certificated security as that term is defined by M.G.L. c. 106, § 8-102(1)(a). Thus, according to the Bank, the requirement under M.G.L. c. 106, § 8-317 that it [**10] take possession of the bond in order to acquire a valid attachment is inapplicable.

Moreover, the Bank contends that, despite its failure to commence an action to reach and apply, "the entry of the [injunction] against [the Debtor] equitably charged the [bond], and all rights incident thereto, with a judicial lien in favor of the Bank." In its memorandum filed on September 13, 1996, the Bank stated that it "is not relying on a reach and apply prayer in its Counterclaim ... to sustain its claim of an equitable lien" against the bond. According to the Bank, a reach and apply action is not the exclusive method for the creation of an equitable lien. It maintains that the injunction was sufficient to give rise to a valid lien.

With respect to the Trustee's avoidance claim, the Bank argues that its alleged lien is not a consensual security interest because it was not created by contract. Thus, the Bank was not required to perfect its lien by taking possession of the bond. The Bank maintains that

Case 3:04-cv-30060-MAP    Document 33    Filed 04/22/2004    Page 9 of 13

Page 4
203 B.R. 865, *; 1997 Bankr. LEXIS 15, **

judicial liens such as the one it obtained are not subject to perfection requirements.

## V. DISCUSSION

The Court must determine whether, under Massachusetts law, the injunction [**11] obtained by the Bank against the Debtor gave rise to an equitable lien against the bond. If so, then the Court must consider whether the Trustee is entitled to avoid the lien pursuant to *11 U.S.C. § 544*. The parties also raise a threshold issue as to whether the industrial [*869] revenue bond is a certificated security for purposes of Article 8 of the Massachusetts Uniform Commercial Code. See M.G.L. c. 106, § 8-102(1)(a)(1990). However, regardless of whether the industrial revenue bond is a certificated security, it is a negotiable instrument. M.G.L. c. 40D, § 10(1994)("Notwithstanding any other provision of this chapter or any recitals in any bonds issued under the provisions of this chapter, all such bonds shall be deemed to be negotiable instruments under the laws of the commonwealth"); M.G.L. c. 106, § 3-104(1990).

Under Massachusetts law, creditors' actions to reach and apply a debtor's property may take either statutory or non-statutory form. *Foster v. Evans, 384 Mass. 687, 691-2, 429 N.E.2d 995 (1981); Stockbridge v. Mixer, 215 Mass. 415, 417, 102 N.E. 646 (1913)*; J. Nolan and L. Sartorio, Equitable Remedies, § § 381-388, pp.514-534 (West 1993 & Supp. 1995). However, [**12] the plaintiff in a non-statutory equitable action to reach and apply must be a judgment creditor. *Stockbridge, 215 Mass. at 417*. The Bank conceded that it was not a judgment creditor with respect to its deficiency claim at the time that it sought the injunction. Therefore, its only option was to have commenced a statutory reach and apply action against the Debtor and State Street Bank.

Statutory creditors' actions to reach and apply are governed by M.G.L. c. 214, § 3(6). n4 Under the statute, the plaintiff must file a complaint against both the principal defendant and any third party who possesses property of, or owes a debt to, the principal defendant. Additionally, the plaintiff must seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim. See *Massachusetts Electric Company v. Athol One, Inc., 391 Mass. 685, 687-88, 462 N.E.2d 1370 (1984); Stockbridge, 215 Mass. at 418*.

> n4 M.G.L. c. 214, § 3 provides in relevant part the following:
>
> The supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases:
>
> (6) Actions by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached and applied until a further time or is of uncertain value ...
>
> M.G.L. c. 214, § 3(6).

[**13]

A third party who possesses property of a debtor is a necessary party to an action to reach and apply. *Massachusetts Electric, 391 Mass. at 688* (one who possesses property sought to be applied to satisfy a debt "must be joined as a party defendant in an action to reach and apply, given his interest in the issue of his indebtedness to the principal defendant and in the disposition of the property in his possession"); *William J. McCarthy Co. v. Rendle, 222 Mass. 405, 406, 111 N.E. 39 (1916)*. Only upon both the filing of an action to reach and apply and the issuance of an injunction restraining the transfer of the property sought to be reached and applied does the plaintiff acquire an equitable lien or equitable attachment upon the property. *Foxborough Savings Bank v. Ballarino (In re Ballarino), 180 Bankr. 343, 348 (D. Mass. 1995); Gray v. Federal Deposit Ins. Corp. (In re Ryan), 28 Bankr. Ct. Dec. (LRP) 790, 792 (Bankr. D. Mass. 1996); In re Borofsky, 138 Bankr. 345, 347 (Bankr. D. Mass. 1992); McCarthy v. Rogers, 295 Mass. 245, 246-7, 3 N.E.2d 787 (1936); Rioux v. Cronin, 222 Mass. 131, 137, 109 N.E. 898 (1915); Snyder v. Smith, 185 Mass. 58, 62, 69 N.E. 1089 (1904)*; [**14] Nolan, Equitable Remedies, § 382 ("as to the non-judgment creditor, the mere filing of the complaint establishes no rights and creates no lien as to the property sought to be reached and applied in satisfaction of the debt. A lien as to such property may be established only upon the issuance of an injunction"). According to one commentator,

> An action to reach and apply has some of the elements of both attachment and trustee process, but also has some unique elements. Reach and apply is a prejudgment security device which is equitable in nature; it seeks either to

Case 3:04-cv-30060-MAP   Document 33   Filed 04/22/2004   Page 10 of 13

203 B.R. 865, *; 1997 Bankr. LEXIS 15, **

Page 5

restrain the defendant's disposition of his own intangible property, and then to reach and apply such [*870] property to satisfy the plaintiff's claim. Elements of attachment are present because the defendant is restrained from disposing of his property in his possession. Elements of trustee process are present in that a third party, a trustee, is restrained from disposing of the defendant's property in the trustee's possession. The critical, unique element is the nature of the property. The property must not be subject to being attached or taken on execution in an action at law. In other words, the property must be an intangible [**15] or an equitable interest. In addition, the property must also be assignable.

In essence an action to reach and apply has a dual nature; it can be an equitable attachment or an equitable trustee process. An equitable attachment is an action at law against the defendant supplemented by an equitable proceeding for attachment of intangible property in the debtor's possession. An equitable attachment could be brought against intangibles such as negotiable instruments. An example of such a negotiable instrument would be a check held by the defendant payable by a third party to the defendant. An equitable attachment of the check would be initiated by a complaint which contains counts both against the defendant and against the bank upon which the check is drawn, or payor bank, as trustee of the check. The count against the defendant would seek to establish the defendant's obligation to the plaintiff. The count against the bank would seek to establish both that the bank has, or had funds available to pay the check and that the defendant is entitled to payment of the check. The complaint would contain two prayers for injunctive relief: one against the defendant restraining him from further [**16] transferring or encumbering the check and against the bank restraining it from paying on the check to the defendant. The complaint would also contain a prayer requesting that the funds in possession of the bank be reached and applied to pay the check in satisfaction of the plaintiff's claim against the defendant.

Michael C. Gilleran, Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply, Mass. L. Rev. 156, 169-170 (1984)(footnotes omitted).

The foregoing passage using the example of a negotiable instrument, namely a check, highlights the deficiency of the Bank's "Motion To Reach and Apply by Preliminary Injunction in the Form of an Equitable Attachment." The order entered by the Superior Court at most implicated Osgood's right to dispose of the bond; it did not reach funds in the hands of State Street Bank that would over time become payable to Osgood or seek to apply them as they became due under the terms of the bond in satisfaction of Osgood's debt to the Bank. Thus, the situation in the instant case is unlike that described in a recent case from the bankruptcy court for this district, *Gray v. Federal Deposit Ins. Corp. (In re* [**17] *Ryan), 28 Bankr. Ct. Dec. (LRP) 790 (Bankr. D. Mass. 1996)*, where the FDIC's predecessor obtained an injunction against the debtor prohibiting him from transferring or encumbering his assets, including stock, as well as orders enjoining reach and apply defendants from transferring or distributing to the debtor his interests in these entities or any income from the entities. The orders also required the reach and apply defendants to place any monies due the debtor in a fund to be held by the clerk of the Superior Court.

Finally, a plaintiff, such as the Bank in the instant case, can acquire a valid interest in a negotiable instrument "only by obtaining a court-approved injunction and possession of the writing." Gilleran, supra, at 172. The reason for this is straightforward: "[a] possessory lien is necessary because the purchaser of an indispensable writing, such as a check, expects that his rights will not be subject to any significant limitations ... [that] ... will be defeated if a defendant can retain possession of a check upon which there is a lien, and then convey that check to a good faith purchaser who subsequently discovers that his rights in the check are subject to the lien." [**18] Id. at 172-73. In this vein, the commentator has noted the following:

> No specific statutes permit a plaintiff to perfect a lien on negotiable instruments or chattel paper by obtaining possession through prohibitory and mandatory injunctions. [*871] However, prohibitory and mandatory injunctions should be available to obtain a possessory lien in these two items of property. Without such an opportunity to perfect his lien in

Case 3:04-cv-30060-MAP    Document 33    Filed 04/22/2004    Page 11 of 13

Page 6
203 B.R. 865, *; 1997 Bankr. LEXIS 15, **

negotiable instruments and chattel paper, an attaching plaintiff would probably lose his priority over subsequent perfected security interests and purchasers.

Id. (footnotes omitted).

Upon consideration of the foregoing requirements and a review of the case law, the Court finds that the Bank failed to obtain a valid lien on the bond. In Borofsky, a case factually similar to the instant case, a creditor sued the debtor on a contract claim, not through an action to reach and apply. The complaint did not request an injunction restraining the debtor from transferring his shares of stock in a corporation. Later, the creditor filed a separate motion seeking injunctive relief. Neither the complaint nor the motion requested that the debtor's stock be [**19] sold to satisfy a potential judgment. The court found that the suit was "not a traditional action to reach and apply." *138 Bankr. at 347-8.* Bankruptcy Judge Queenan held that the injunction "may have cured the initial absence of a 'reach,' but did not transform the proceeding into one seeking to 'apply' the stock or its proceeds to a judgment," *Id. at 348.* Therefore, the creditor did not acquire an equitable attachment or lien against the stock. Id.

Like the creditor in Borofsky, the Bank's Amended and Supplemental Counterclaim did not purport to reach and apply any assets of the Debtor in payment of the debt. The Bank sought only a judgment against the Debtor in the amount of $ 132,687.67 plus interest, costs and attorneys' fees. It was not until eight months later that the Bank filed its Motion which it labelled a "Motion to Reach and Apply by Preliminary Injunction in the Form of an Equitable Attachment" and Affidavit through which it nominally sought to reach and apply various property of the Debtor to the deficiency obligations. However, the Bank, in its Motion, though referencing M.G.L. c. 214, § 3(6), did not request more than the relief set forth in the Superior [**20] Court order restraining and enjoining Osgood from "selling, assigning, transferring, alienating, conveying, mortgaging, hypothecating, or otherwise encumbering or disposing of any rights" in the bond. In short, it did not file an action to reach and apply pursuant to that statute. Moreover, the Motion did not name either State Street Bank or its predecessor trustee, Union, as defendants. Most importantly, the Bank did not attempt to restrain either State Street or Union from making payments to the Debtor, and it did not request an order that the bond be applied to satisfy Osgood's debt to the Bank. In short, the injunction issued by the Superior Court simply prohibited the Debtor from transferring his rights under the bond, and, as a result, State Street Bank continued to make prepetition payments to the Debtor and postpetition payments to the Trustee. The Debtor could have sold or transferred the bond and conveyed clear title to a bona fide purchaser. If the Debtor had violated the injunction, the Bank would have had as its only remedy an action for contempt against the Debtor. The Bank would have had no recourse against a bona fide purchaser of the bond.

Despite its reference to [**21] M.G.L. c. 214, § 3(6) in the Motion, the Bank conceded that it did not comply with the requirements of a statutory reach and apply action. The Court finds that the Bank's citation of the statutory reach and apply action indicates that it intended to reach and apply the bond in satisfaction of its claim against the Debtor but failed to comply with the statutory and case law requirements for such an action. The Bank's failure to restrain State Street Bank from making payments to the Debtor is fatal to its contention that, through its Motion and injunction, it acquired an equitable lien against the bond. Under Massachusetts law, State Street Bank was a necessary party to an action to reach and apply. *Massachusetts Electric, 391 Mass. at 688.* Moreover, the Court finds that the Bank, like the creditor in Borofsky, may have "reached" the bond payments actually made to Osgood, but it did not take sufficient action to "reach" payments due to Osgood or to "apply" them in satisfaction of its claim against the Debtor. The Bank offered no pertinent authority for its theory that, despite its failure to commence [*872] a statutory reach and apply action, it acquired an equitable lien against the [**22] bond and the stream of payments owed to Osgood through the injunction it obtained restraining the Debtor. The Court finds that the cases cited by the Bank, Snyder, McCarthy, and Rioux, do not stand for the proposition asserted by the Bank. To the contrary, in each of these cases, the plaintiff, unlike the Bank, instituted an action to reach and apply and obtained injunctions against either the debtor or the debtor and third parties.

In Snyder, the plaintiff filed an action to reach and apply, naming as defendants both the owner of, and two trustees who possessed, certain assets. Shortly after commencement of the suit, the court issued a temporary injunction restraining all of the defendants from disposing of the property. The Supreme Judicial Court characterized the plaintiff's interest as an "equitable attachment" and stated the following:

> A bill brought under our statute is like a creditors' bill under general equity practice, though it may be brought by a single creditor for his own benefit without having obtained a judgment, and without making other creditors parties. That equitable liens upon property can be

Case 3:04-cv-30060-MAP   Document 33   Filed 04/22/2004   Page 12 of 13

Page 7

203 B.R. 865, *; 1997 Bankr. LEXIS 15, **

enforced when there is no other control of the [**23] property than by the process of a court of equity has been decided repeatedly in the Commonwealth.

*185 Mass. at 62.*

In McCarthy, the court found that the plaintiff acquired an equitable lien against the Debtor's property by filing a statutory reach and apply suit and obtaining a temporary injunction against the debtor. *295 Mass. at 247.* Thus, the instant case is distinguishable from both Snyder and McCarthy because the Bank neither commenced an action to reach and apply nor made State Street Bank a party to the injunction.

The Court finds that Rioux is inapposite to the instant case. Unlike the Bank, which obtained only a pre-judgment injunction, the two plaintiffs in Rioux were judgment creditors. Unable to satisfy their judgments, they filed suit against the original defendant and his wife, to whom he had transferred certain stock, as well as the issuer of the stock. Both suits sought to reach and apply the shares of stock to the payment of the plaintiffs' claims. The court entered injunctions restraining all of the defendants from transferring any of the shares of stock. The Supreme Judicial Court stated that the filing of the suit and the issuance [**24] of the injunction created a lien. However, "the mere filing of a bill to reach and apply ... property of the debtor to the payment of a creditor's claim which has not been reduced to judgment, creates no lien in favor of the creditor." Id. at 137. Accord Nolan, Equitable Remedies, § 382 ("upon the filing of the action, the judgment creditor, the absence of a preliminary injunction notwithstanding, commences an equitable levy of execution. The filing of the action creates a lien as to the property sought to be reached"). Therefore, the instant case is distinguishable from Rioux as the Bank was not a judgment creditor at the time that it obtained the injunction and the Bank failed to commence a reach and apply action.

The Bank also has contended that a reach and apply action is not the exclusive means by which a creditor may obtain an equitable lien. Citing *Bank of Boston v. Haufler, 20 Mass. App. Ct. 668, 482 N.E.2d 542 (1985)*, it maintained that "a negative injunction directed to the payee creates a lien of funds subsequently received." This Court disagrees, finding that Haufler is factually distinguishable from the case now before the Court.

In Haufler, [**25] two banks sued the defendant to establish his liability under promissory notes. The banks obtained injunctions restraining Haufler and his attorneys from disposing of his interest in the proceeds of an unrelated land taking action that he had previously filed against the Commonwealth. However, because the Commonwealth enjoyed sovereign immunity, the banks were unable to make it a party to either the injunction or a reach and apply action. Judgment entered in favor of one of the banks against Haufler prior to the time that the Commonwealth paid Haufler's attorneys pursuant to a judgment entered in the unrelated action.

[*873] The Massachusetts Appeals Court held that the banks' injunctions against Haufler and his attorneys constituted an equitable attachment of the proceeds. *20 Mass. App. Ct. at 673.* However, the court noted that "an injunction by itself ... does not operate to create a lien on property held by one ... not subject to the injunction." *Id. at 674.* Therefore, "the earliest the lien could attach to the proceeds was when the Commonwealth paid them over to Haufler's attorneys, who were then subject to the two injunctions." Id. Similarly, in the instant case, the injunction [**26] did not operate to create a lien on the payment stream from State Street and the only lien the Bank obtained would be on monies actually paid to and in the possession of the Debtor.

This Court finds that Haufler is not persuasive authority for the Bank's contention that the injunction gave rise to an equitable lien because that case is factually distinguishable from the instant case. The Haufler plaintiffs could not have made the Commonwealth a party to either an injunction or an action to reach and apply because the Commonwealth enjoyed sovereign immunity. To the contrary, in the instant case, the Bank was not without a remedy. It could have and should have filed an action pursuant to M.G.L. c. 214, § 3(6) against both the Debtor and State Street Bank and sought an injunction against both parties.

This Court is persuaded by Judge Queenan's reasoning in Borofsky. The Court rejects as meritless the Bank's claim that it was entitled to rely upon the injunction without bringing a reach and apply action against State Street Bank and the Debtor. The prejudgment injunction restraining only the Debtor did not give rise to a valid equitable lien against the bond in favor of [**27] the Bank.

Having found that the Bank does not have an equitable lien against the bond, the Court need not reach the issue of the Trustee's avoidance powers under *11 U.S.C. § 544(a).* The Court also need not decide whether the bond is a certificated security. Counts Three and Four of the Trustee's Complaint are moot.

## V. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's Motion for Summary Judgment and denies the Defendant's Motion for Summary Judgment.

By the Court,

Case 3:04-cv-30060-MAP   Document 33   Filed 04/22/2004   Page 13 of 13

203 B.R. 865, \*; 1997 Bankr. LEXIS 15, \*\*

Page 8

Joan N. Feeney

United States Bankruptcy Judge

Dated: January 9, 1997

**ORDER**

In accordance with the Memorandum dated January 9, 1997, the Court grants the Plaintiff's Motion for Summary Judgment and denies the Defendant's Motion for Summary Judgment.

By the Court,

Joan N. Feeney

United States Bankruptcy Judge

Dated: January 9, 1997