UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30060-MAP

| | | |
|---|---|---|
| CHESWELL, INC., Plaintiff | ) | PLAINTIFF'S OPPOSITION TO DEFENDANT DZWONKOSKI'S MOTION TO DISMISS AND REQUEST FOR FURTHER RELIEF |
| vs. | ) | |
| JAMES F. KENNEY, et al., Defendants | ) | |

FILED U.S. DISTRICT COURT

## I. INTRODUCTION

The plaintiff Cheswell, Inc., pursuant to Fed. R. Civ. P. 56, and Local Rule 56.1, hereby opposes Defendant Dzwonkoski's Motion to Dismiss or in the Alternative for Summary Judgment. The grounds for this opposition are that there is a genuine issue of material fact as to whether the defendants James F. Kenney or Susan M. Kenney or both, together with Mr. Dzwonkoski, transferred property owned by Mr. Dzwonkoski to Mrs. Kenney to defraud the defendants' creditors, including Cheswell. Under the Uniform Fraudulent Transfer Act, Mass. Gen. Laws c. 109A, Mr. Dzwonkoski is properly a defendant because he (a) transferred his property to Mrs. Kenney and then (b) accepted mortgages on the property from Mrs. Kenney when he knew that she and her husband were being sued by his creditors and that the subject property was going to be attached.[1]

The plaintiff also requests further relief in the form of an order either (a) setting aside the mortgages granted by Mrs. Kenney to Mitchell Dzwonkoski under the Uniform Fraudulent Transfer Act or (b) subordinating the mortgages to

[1] Pages 4 and 5 of the defendant's memorandum appear to address the issue of why Mr. Dzwonkoski should not be liable under Mass. Gen. Laws c. 93A. However, the plaintiff has not asserted a claim against Mr. Dzwonkoski under c. 93A. See Complaint, Document No. 1, Counts One and Four.

the real estate attachment of Cheswell that has been allowed in this matter. The grounds for this request for relief are that Mr. Dzwonkoski is not a good faith transferee within the meaning of the Uniform Fraudulent Transfer Act and therefore the mortgages he received should be either set aside or equitably subordinated to Cheswell's lien.

## II. FACTUAL BACKGROUND

This is an action in which the plaintiff is seeking to recover against James F. Kenney, Susan M. Kenney and others in connection with a series of real estate transactions undertaken to defraud the plaintiff. Cheswell is a corporation located at 283 Poocham Road, West Chesterfield, New Hampshire (Verified Complaint, ¶4).[2] Cheswell is a plaintiff in an action in this district known and styled as *Cheswell, Inc., et al. v. Premier Homes and Land Corporation, et al.*, Civil Action No. 02-30115-KPN ("*Cheswell I*") (Verified Complaint, ¶13). The defendants in that matter include, among others, Premier Homes and Land Corporation ("Premier") and its president Mr. Kenney. Premier is a Massachusetts corporation that was owned and controlled by Mr. Kenney[3] (Verified Complaint, ¶14).

---

[2] Inasmuch as the complaint in this matter is verified, the plaintiff is entitled to rely on the factual allegations therein as if they were contained in an affidavit in opposition to the motion for summary judgment. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *Celtic Dev. Corp. v. FDIC*, 836 F. Supp. 926, 929 (D. Mass. 1993).

[3] At some point, the stock in the corporation may have been transferred to Mrs. Kenney. However, at his deposition in *Cheswell I*, taken on September 10, 2004, Mr. Kenney acknowledged that he controlled the activities of Premier and managed exclusively its real estate transactions. With leave of the court, the plaintiff will submit excerpts of the transcript of Mr. Kenney when it becomes available.

the real estate attachment of Cheswell that has been allowed in this matter. The grounds for this request for relief are that Mr. Dzwonkoski is not a good faith transferee within the meaning of the Uniform Fraudulent Transfer Act and therefore the mortgages he received should be either set aside or equitably subordinated to Cheswell's lien.

## II. FACTUAL BACKGROUND

This is an action in which the plaintiff is seeking to recover against James F. Kenney, Susan M. Kenney and others in connection with a series of real estate transactions undertaken to defraud the plaintiff. Cheswell is a corporation located at 283 Poocham Road, West Chesterfield, New Hampshire (Verified Complaint, ¶4).[2] Cheswell is a plaintiff in an action in this district known and styled as *Cheswell, Inc., et al. v. Premier Homes and Land Corporation, et al.*, Civil Action No. 02-30115-KPN ("*Cheswell I*") (Verified Complaint, ¶13). The defendants in that matter include, among others, Premier Homes and Land Corporation ("Premier") and its president Mr. Kenney. Premier is a Massachusetts corporation that was owned and controlled by Mr. Kenney[3] (Verified Complaint, ¶14).

---

[2] Inasmuch as the complaint in this matter is verified, the plaintiff is entitled to rely on the factual allegations therein as if they were contained in an affidavit in opposition to the motion for summary judgment. *See Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir. 1991); *Celtic Dev. Corp. v. FDIC,* 836 F. Supp. 926, 929 (D. Mass. 1993).

[3] At some point, the stock in the corporation may have been transferred to Mrs. Kenney. However, at his deposition in *Cheswell I,* taken on September 10, 2004, Mr. Kenney acknowledged that he controlled the activities of Premier and managed exclusively its real estate transactions. With leave of the court, the plaintiff will submit excerpts of the transcript of Mr. Kenney when it becomes available.

Mitchell Dzwonkoski is a retired employee of the Amherst Department of Public Works (Dzwonkoski Depo. at 7).[4] On October 23, 2001, he agreed to sell property he owned on the west side of Federal Street in Belchertown, Massachusetts to Premier (Affidavit of Felicity Hardee, Ex. 1).[5] Mr. Dzwonkoski did not have the property appraised or undertake any other research to ascertain the fair market value of the property (Dzwonkoski Depo. at 45-46). The price was based upon Mr. Dzwonkoski's personal belief as to the value of the property (Dzwonkoski Depo. at 44).

After the purchase agreement was signed but before the closing, Mr. Kenney and Mr. Dzwonkoski behaved in a manner suggesting that Mr. Kenney owned or controlled the property. For example, Mr. Kenney contracted with Rocky Mountain Wood Company, Inc. to have the land cleared of vegetation (Affidavit of Felicity Hardee, Ex. 2, 3). This work was done in violation of wetlands regulations and caused the Belchertown Conservation Commission to issue an enforcement order against Premier. Both the commission and Mr. Kenney described the property as belonging to Mr. Kenney despite the fact that it had not been conveyed to Mr. Kenney or Premier but was, in fact, still owned by Mr. Dzwonkoski (Affidavit of Felicity Hardee, Ex.2; Dzwonkoski Depo. at 59, 62).

On July 10, 2002, the plaintiff commenced suit against Premier and Mr. Kenney in *Cheswell I* (Affidavit of Felicity Hardee, Ex. 4). Cheswell alleged, among other things, that Premier and Mr. Kenney breached a contract with

---

[4] Excerpts of the deposition of Mr. Dzwonkoski are attached as Exhibit 16 to the Affidavit of Felicity Hardee.

[5] A time line that shows the order of the events recited herein is attached hereto as Exhibit A).

Cheswell, defaulted under a promissory note in the amount of $60,000 and engaged in fraud and unfair or deceptive acts or practices in violation of Mass. Gen. Laws c. 93A (Verified Complaint, ¶15). Several weeks later, Premier commenced an action against Cheswell in the Superior Court of the Massachusetts Trial Court, Hampshire County (the "Summary Process Case") (Affidavit of Felicity Hardee, Ex. 5). The Summary Process Case was then removed to this court (Civil Action No. 02-30118-KPN) (Affidavit of Felicity Hardee, Ex. 6). Attached to the complaint in the Summary Process Case were two documents that Mr. Kenney later admitted he fabricated (Affidavit of Felicity Hardee, Ex. 6). The court found that Premier had "wilfully engaged in a scheme to deceive the Superior Court and, in turn, this tribunal" (Affidavit of Felicity Hardee, Ex. 6 ). The court further concluded that Premier was "persistent and intentional in its actions" (Affidavit of Felicity Hardee, Ex. 6). As a result, the Summary Process case was dismissed and sanctions of $24,845.99 imposed on Premier.

At same time Cheswell was suing Mr. Kenney and Premier in *Cheswell I*, other creditors of Mr. Kenney were seeking redress through the state courts. On or about August 13, 2002, Rocky Mountain Wood Company, Inc. sued Mr. Kenney "doing business as RE/MAX Prime Properties" in the Springfield Division of the District Court Department of the Massachusetts trial court (*Rocky Mountain I*) (Affidavit of Felicity Hardee, Ex. 3). Rocky Mountain alleged that Mr. Kenney failed to pay for the clearing services it performed on the Federal Street property owned by Mr. Dzwonkoski (Affidavit of Felicity Hardee, Ex. 3).

The complaint was served on Mr. Kenney on August 13, 2002 (Affidavit of Felicity Hardee at Ex. 3).

In October, both Cheswell and Rocky Mountain Wood were moving ahead in different *fora* to secure their rights against Mr. Kenney and his corporations. On October 24, 2002, Rocky Mountain Wood secured a judgment against Mr. Kenney in Springfield District Court (Affidavit of Felicity Hardee, Ex. 3). On October 29, 2002, Cheswell filed a motion for real estate attachment in *Cheswell I* (Affidavit of Felicity Hardee, Ex. 4). At some point, Premier assigned the contract it had with Mr. Dzwonkoski to purchase the Federal Street property to J.F. Kenney Corporation, another corporation owned or controlled by Mr. Kenney (Affidavit of Felicity Hardee, Exs. 7, 17).[6]

On December 5, 2002, Rocky Mountain Wood Company commenced a second action in Springfield District Court, this time naming Mr. Dzwonkoski and Premier as defendants (*Rocky Mountain II*) (Affidavit of Felicity Hardee, Ex. 8). Mr. Dzwonkoski was served on December 5. Mr. Dzwonkoski then called Attorney Robert Ward, an attorney who is a defendant in *Cheswell I*[7]. Mr. Dzwonkoski testified at his deposition as follows:

"Q. What did you do when you got this summons?

[6] The assignment was dated October 23, 2002 (Affidavit of Felicity Hardee at Ex. 7.) In light of the fact that Mr. Kenney and Premier have a history of fabrication of evidence, however, the plaintiff does not concede that the date contained on the assignment was the date the right to purchase the Federal Street property was actually assigned.

[7] In *Cheswell I,* the plaintiff alleges that Cheswell loaned Premier $60,000 and received a note and a mortgage to secure the loan (Affidavit of Felicity Hardee, Ex. 11). Mr. Ward represented Premier and drafted the note and mortgage (Affidavit of Felicity Hardee, Ex. 11). The plaintiff further alleges that Mr. Ward promised to record the mortgage but failed to do so (Affidavit of Felicity Hardee, Ex. 11). The court in *Cheswell I* has concluded that a genuine issue of material fact exists as to whether Mr. Ward was negligent in failing to record the mortgage (Affidavit of Felicity Hardee, Ex. 11).

A. I sat down and read and tried to understand what I could with my little brain, but I probably called Ward and asked him.

Q. What did Mr. Ward tell you?

A. Well, he told me that there was in litigation against Kenney.

Q. What was the litigation about?

A. Kenney didn't pay him, I imagine.

Q. Kenney didn't pay who?

A. Rocky Mountain."

(Dzwonkoski Depo. at 74). Immediately thereafter, Mr. Dzwonkoski signed a deed for the Federal Street property to Susan M. Kenney, Mr. Kenney's wife (Affidavit of Felicity Hardee, Ex. 9).[8] Mr. Dzwonkoski did not receive cash proceeds for the premises (Dzwonkoski Depo. at 77-78). Instead, he received a promissory note and mortgage for the money he was owed (Dzwonkoski Depo. at 78). Despite the conflict of interest, Mr. Ward, who previously represented Premier and Mr. Kenney, represented both Mr. Dzwonkoski and Mrs. Kenney in this transaction (Affidavit of Felicity Hardee, Ex. 10). Even though the deed, note

---

[8] It is plain that in accepting a deed from Mr. Dzwonkoski and giving him a mortgage, Mrs. Kenney was acting as the alter ego of Mr. Kenney. In the first place, the purchase agreement for the Federal Street property was originally between Mr. Dzwonkoski and Premier. Then Premier, acting through Mr. Kenney, assigned the agreement to J. F. Kenney Corporation, another corporation controlled by Mr. Kenney. Then, on December 10, 2002, the parties executed a Hold Harmless Agreement between Susan M. Kenney as "Buyer/Guarantor," Premier as guarantor and Mr. Kenney individually as guarantor (Affidavit of Felicity Hardee, Ex.8 ). This agreement acknowledged that Premier was solely responsible for liability in *Rocky Mountain II.* Inasmuch as Susan Kenney is an insider to Mr. Kenney under the Uniform Fraudulent Transfer Act, Mass. Gen. Laws c. 109A, §2, transfers made to and by Mrs. Kenney must be deemed to be the equivalent of transfers made to or by Mr. Kenney or any of his corporations. Even if the court were to consider Mrs. Kenney's actions as distinct from those of her husband, the court has the power to enter an order to reach and apply the property where the record title "is conveyed to a third person with intent to defeat, delay or defraud the creditors of the debtor." Mass. Gen. Laws c. 214, §3(8).

and mortgage are dated December 5, 2002, Mr. Ward did not record them that day.

Four days later, on December 9, 2002, this court scheduled the motion for real estate attachment in *Cheswell I* for December 11, at 10:00 a.m. (Affidavit of Felicity Hardee, Ex. 4). There is a genuine issue of material fact regarding what Mr. Dzwonkoski was told or knew about that attachment or an attachment in *Rocky Mountain II.* In Defendant Dzwonkoski's Request for Admissions filed with the court on April 23, 2004, the defendant made the following admission: "Defendant Dzwonkoski was informed of a real estate attachment on all property owned by Premier in Hampshire County, Massachusetts on December 11, 2002, at approximately 9:00 am." (Affidavit of Felicity Hardee, Ex. 12).[9] This admission is consistent with Mr. Dzwonkoski's deposition testimony about the Rocky Mountain litigation.

> Q. What was your understanding about what was going to happen with the Rocky Mountain litigation?
> A. What was my understanding? I really didn't have much of an understanding. I really just thought if something wasn't done and we didn't satisfy it, they would put an attachment on the property which we had a mortgage on it and I wanted to have it kind of free and clear.
> Q. Do I understand you to be saying that you were concerned that Rocky Mountain was going to get an attachment on the property?
> A. I think.

---

[9] The Defendant Dzwonkoski's Request for Admissions was signed by counsel and filed with the court on April 27, 2004. It requested the plaintiff admit the truth of the allegation that Mr. Dzwonkoski "was informed of a real estate attachment on all property owned by Premier in Hampshire County, Massachusetts on December 11, 2002 at approximately 9:00 am." The request for admission was filed and served before the defendant provided automatic discovery pursuant to Local Rule 26.2(A). Accordingly, the parties agreed that the request would be voluntarily withdrawn until the exchange of automatic discovery (see Civil Action No. 3:04-cv-30060, Document No. 48). The fact that the parties agreed to withdraw the admission as a request for discovery does not undermine its effect as a judicial admission in this matter. *See* M. Graham, Federal Practice and Procedure: Evidence §7026 (Interim Edition) ("[u]nequivocal admissions made by counsel during the course of a trial are judicial admissions binding on his client" if they are statements as to matters of fact).

Dzwonkoski Depo. at 97-98.

Cheswell's motion for real estate attachment proceeded in this court as scheduled on December 11, 2002 at 10:00 a.m. While counsel was arguing the motion for real estate attachment before this court in Springfield, Mr. Ward recorded the deed to the Federal Street property from Mr. Dzwonkoski to Mrs. Kenney and Mr. Dzwonkoski's mortgage on the property. The documents were recorded with the Hampshire County Registry of Deeds at 10:03 a.m. (Affidavit of Felicity Hardee, Ex. 9). Neither Mr. Kenney nor his counsel David Noonan informed Magistrate Judge Neiman that property that was originally to be purchased by Premier was being transferred to Mrs. Kenney and a mortgage granted to Mr. Dzwonkoski (Affidavit of Felicity Hardee, ¶19).

Approximately two months later, Rocky Mountain commenced suit again against Mr. Dzwonkoski and Mrs. Kenney in Massachusetts Superior Court (*Rocky Mountain III*) (Affidavit of Felicity Hardee, Ex. 13). Rocky Mountain alleged that Mr. Dzwonkoski and Mrs. Kenney violated the Uniform Fraudulent Transfer Act by transferring the Federal Street property to Mrs. Kenney (Affidavit of Felicity Hardee, Ex. 13). Once again, Mr. Dzwonkoski contacted Attorney Robert Ward (Dzwonkoski Depo. at 116). Mr. Dzwonkoski then settled the Rocky Mountain litigation for a payment of $12,600 (Dzwonkoski Depo. at 109). The Kenneys acknowledged that they owed the money to Rocky Mountain and Mrs. Kenney once again gave Mr. Dzwonkoski a note and a mortgage to secure repayment of the debt (Dzwonkoski Depo. at 111). As of February 2003, Mrs.

Kenney owed Mr. Dzwonkoski the principal amount of $192,600, consisting of the note in the amount of $180,000 given on December 5, 2002, and the note in the amount of $12,600 given on January 31, 2003.

However, Mr. and Mrs. Kenney have not made the payments due Mr. Dzwonkoski under the notes (Dzwonkoski Depo. at 103). It appears that the Kenneys are unable to make the payments because they have significant financial difficulties. Premier, the corporation they owned, is insolvent and filed for bankruptcy protection in this district on March 6, 2003, three months after the transfer of the Federal Street property (*In Re Premier Homes and Land Corporation*, United States Bankruptcy Court, District of Massachusetts Case No. 03-41177-HJB). Moreover, at some point in time Mr. Dzwonkoski became aware that the Kenneys were in grave financial straits. At his deposition, Mr. Dzwonkoski testified as follows:

> Q. What did you do to follow up with or to make sure that [the Kenneys] paid you the money? Did you take any steps to enforce your rights to get paid?
> A. The only steps I could have taken is to take the land back.
> Q. Did you do that?
> A. No; I did not.
> Q. Why not?
> A. I want to sell the land. I want to get rid of it.
> Q. So right now—
> A. (Interposing) So I'm giving them all a break, as much as I can.
> Q. Did Mr. Kenney tell you that he couldn't afford to pay you?
> A. When I talked to him, he says all his money is tied up in litigation or whatever he had in property or something was—he just didn't have it.

Dzwonkoski Depo. at 103-04.

Since transferring the property to Mrs. Kenney and receiving the mortgages from her, Mr. Dzwonkoski has done nothing to enforce his rights under

the notes (Dzwonkoski Depo. at 103). Moreover, Mr. Kenney is now operating a landscaping materials business on the property (Dzwonkoski Depo. at 124; Exhibit of Felicity Hardee, Exs. 14, 15).[10]

## III. STATEMENT OF MATERIAL FACTS UNDER LOCAL RULE 56.1

- On October 13, 2001, Mr, Dzwonkoski agreed to sell the Federal Street property to Premier (Affidavit of Felicity Hardee, Ex.1).
- Premier was owned and controlled by Mr. Kenney (Verified Complaint, ¶14).
- Premier and Mr. Kenney are defendants in *Cheswell, Inc., et al. v. Premier Homes and Land Corporation, et al.*, Civil Action No. 02-30115-KPN (Verified Complaint, ¶13).
- Premier assigned the purchase agreement for the Federal Street property to J. F. Kenney Corporation (Affidavit of Felicity Hardee, Ex. 7).
- Mr. Dzwonkoski and Premier were named as co-defendants in *Rocky Mountain II* (Affidavit of Felicity Hardee, Ex. 8).
- As soon as he was served with the complaint in *Rocky Mountain II,* Mr. Dzwonkoski signed a deed to the Federal Street property to Mrs. Kenney (Dzwonkoski Depo. at 74).
- Mrs. Kenney immediately gave a mortgage back to Mr. Dzwonkoski (Dzwonkoski Depo. at 78).
- A motion for real estate attachment in *Cheswell I* was scheduled and heard on December 11, 2002 at 10:00 a.m. (Affidavit of Felicity Hardee, Ex. 4).
- The mortgage from Mr. Dzwonkoski to Mrs. Kenney was recorded at 10:04 (Affidavit of Felicity Hardee, Ex. 9).
- Mr. Kenney did not reveal these transactions to the court (Affidavit of Felicity Hardee, ¶19).
- Mr. Dzwonkoski knew that the Federal Street property was going to be attached by a creditor of Mr. Kenney (Dzwonkoski Depo. at 97-98).
- Mr. Dzwonkoski has not been paid by Mrs. Kenney (Dzwonkoski Depo. at 103).
- Mr. Dzwonkoski has not taken any measures to enforce his rights under the mortgage (Dzwonkoski Depo. at 103-04).
- Mr. Kenney is (or was until recently) operating a landscaping materials business on the Federal Street property (Dzwonkoski Depo. at 124; Affidavit of Felicity Hardee, Exs. 14,15).
- Premier is insolvent.

---

[10] At his deposition on September 10, 2004, Mr. Kenney testified that his wife has recently demanded that Mr. Kenney close down the Belchertown Landscape Materials business.

- The Kenneys are unable to pay their debts (Dzwonkoski Depo. at 103-04).
- Mr. Dzwonkoski knew that "all [Mr. Kenney's] money was tied up in litigation" (Dzwonkoski Depo. at 103-04).

## IV. ARGUMENT

*A. Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is 'genuine' "'if the evidence about the fact is such that a reasonable [factfinder] could resolve the point in the favor of the non-moving party.'" 'A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law.'" *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (internal quotations and citations omitted). Therefore, the court must construe the record in the light most favorable to the plaintiff and resolve all reasonable inferences in their favor. *See Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir. 1999).

*B. The Defendant's Motion Should be Denied Because He Has Failed to Support His Argument As Required by Fed. R. Civ. P. 56 and Local Rule 56.1*

Rule 56 of the Federal Rules of Civil Procedure requires summary judgment to enter only if the "depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact. . . ." Local Rule 56.1 also requires the moving party to submit "a concise statement of the material facts of record as to which the

moving party contends there is no genuine issue to be tried. . . ." However, Defendant Dzwonkoski's Memorandum in Support of a Motion to Dismiss or Summary Judgment cannot be fairly said to meet these requirements. Most of the defendant's memorandum consists of argument; there is only a skeletal recitation of the facts. Those facts that are recited are not property supported, are inadmissible or are not material. For example, Mr. Dzwonkoski alleges that the Federal Street property was sold to Mrs. Kenney "for the fair market price of $200,000" (Defendant's Memorandum at 1). However, Mr. Dzwonkoski has presented no evidence, other than his own opinion, supporting a conclusion that the fair market value of the property was $200,000. Since Mr. Dzwonkoski does not have a background as a real estate appraiser or developer, as a matter of law, he is not competent to provide testimony at to the fair market value of 8.4 acres of land on Federal Street in Belchertown, Massachusetts. *See Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D. Mass. 1997). The defendant further alleges that he did not know of the existence of Cheswell, Inc. but, as will be shown below, this fact is not material to determining whether there was a transfer to defraud Cheswell. Since most of the "facts" recited by Mr. Dzwonkoski are wholly unsupported, improperly supported, are immaterial or constitute legal argument, the defendant's motion to dismiss or, in the alternative for summary judgment should be denied as failing to comply with Rule 56 and Local Rule 56.1. *See Holland v. Smith & Nephew Richards, Inc.*, 100 F. Supp. 2d 53, 54, n.2 (D. Mass. 1999).

*C. The Defendants Are Liable Under the Uniform Fraudulent Transfer Act Because Property was Transferred When the Court Was Considering a Real Estate Attachment*

Section 5 of the Massachusetts Uniform Fraudulent Transfer Act (the "UFTA") provides as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor.

Mass. Gen. Laws c. 109A, §5(a). Thus, in order to recover under §5 of the UFTA, a creditor[11] must demonstrate that the debtor made a transfer or incurred an obligation with the intent to defraud *any*[12] creditor. It is well established that the grant of a mortgage constitutes a transfer under the UFTA. Mass. Gen. Laws c. 109A, §2. *Hasbro, Inc. v. Serafino,* 37 F. Supp. 2d 94, 96 (D. Mass. 1999).

Section 5 of the UFTA sets forth some of the factors, known in some jurisdictions as "badges of fraud," that may be considered in determining the debtor's intent to defraud the creditor.

> In determining actual intent [to defraud] . . . consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;

[11] It appears that there is no issue that Cheswell is a creditor of Mr. Kenney and Premier. Cheswell had commenced litigation against them and the court had entered an order for sanctions to be paid by those defendants. Under these circumstances, it is plain that Cheswell is a "creditor" within the meaning of the UFTA. *See* Mass. Gen. Laws c. 109A, §2 (a creditor is a person having a claim); *Hoult v. Hoult,* 862 F. Supp. 644, 650 (D. Mass. 1994).

[12] Thus, even if the transfers were for the purpose of hindering Rocky Mountain, the transactions would violate §5, giving Cheswell the right to recover.

> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit; . . .
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred . . . .

Mass. Gen. Laws c. 109A, sec. 5(b). Any one of these factors may be enough to support a finding that a transfer is fraudulent. A "confluence of several [of these factors] can constitute conclusive evidence of an actual intent to defraud . . . ." *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,* 926 F.2d 1248, 1254-55 (1st Cir. 1991).

Thus, in *Hasbro v. Serafino,* 37 F. Supp. 2d 94 (D. Mass. 1999), the court held that the grant of mortgages by George Serafino to his son Anthony violated §5 of the UFTA. The court noted that a number of the factors identified in §5(b) were present when George Serafino granted a mortgage to his son. At the time of the transfer, George was being sued by Hasbro. *Id.* at 98. He attempted to transfer a substantial portion of his property to insiders, namely his son. *Id.* Most significantly, the timing of the transfers was suspicious:

> [t]he mortgage was granted on December 16, 1996, just four days after the attachment hearing in front to Magistrate Judge Neiman. At the hearing, no mention was made of George Serafino's intent to grant mortgages on the property to be attached.

*Id.* The court concluded that against this backdrop, the claim of the creditor Hasbro trumped the grant of the mortgage to Anthony. *Id.*

The facts in this case demonstrate conclusively that the grant of the mortgages to Mr. Dzwonkoski by Mrs. Kenney was made to defraud Cheswell;[13] if anything, the facts in this case are even more compelling than those in *Hasbro*. In this case, Mr. Kenney, Mrs. Kenney and Premier had been sued by multiple creditors, namely Cheswell and Rocky Mountain (Affidavit of Felicity Hardee, Exs. 3, 4, 8, 13). Mass. Gen. Laws c. 109A, §5(b)(4). Mr. Kenney has retained control over the property after the transfer and is (or has been) operating his landscape materials business on the parcel (Affidavit of Felicity Hardee, Ex. 14,15). Mass. Gen. Laws c. 109A, §5(b)(2). Mr. Kenney was unable to pay his bills and was in significant financial difficulty when the mortgage was given to Mr. Dzwonkoski (Dzwonkoski Depo. at 103-04). Mr. Kenney did not reveal to this court his plans or those of his wife to acquire the Federal Street property and to grant a mortgage back to Mr. Dzwonkoski (Affidavit of Felicity Hardee, ¶19).

Most problematic for the defendants, however, is the timing of the transactions. The deed and mortgage were signed just days before the real estate attachment hearing in *Cheswell I*. However, rather than recording these instruments immediately as would be the common practice, the recording attorney who represented both Mrs. Kenney and Mr. Dzwonkoski and who is also a defendant in *Cheswell I* waited until the precise moment this court was hearing the arguments of counsel on the real estate attachment. These facts, which are undisputed, demonstrate conclusively that the mortgage given by Mrs. Kenney to

---

[13] The transfer of the property from Mr. Dzwonkoski to Mrs. Kenney in the first instance would also be fraudulent with respect to the debt (if any) he owed Rocky Mountain. Indeed, that is precisely what was alleged in *Rocky Mountain III*. However, since Mr. Dzwonkoski did not owe a debt to Cheswell, for purposes of this analysis the plaintiff focuses on the transfers of Mrs. Kenney to Mr. Dzwonkoski, namely the grant of the mortgages of the property.

Mr. Dzwonkoski was to defraud Cheswell. Therefore, Mr. Dzwonkoski's motion to dismiss, or in the alternative for summary judgment should be denied.

### *D. Mr. Dzwonkoski is Properly a Defendant in This Matter as a Transferee of Mrs. Kenney*

The law is clear that, in an action under the UFTA, both the transferor and the transferee are properly defendants. *See 5 Collier on Bankruptcy* ¶548.07[1] (15th ed. Rev. 2003)(construing cognate provisions of the §548 of the Bankruptcy Code). *See generally Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d at 1256; *Fleet National Bank v. Merriam*, 45 Mass. App. 592, 598, 699 N.E.2d 1266 (1998). Therefore, Mr. Dzwonkoski is properly a defendant in this matter and his motion to dismiss should be denied.

Mr. Dzwonkoski's only defense in this matter is that he had no knowledge of the existence of Cheswell or of Mr. Kenney's debts to it (Defendant's Memorandum at 2).[14] This fact, even if true, is not material. Mr. Dzwonkoski was a transferee of the mortgage from Mrs. Kenney. This fact without more is enough to establish that he is properly a defendant in this matter.

However, the facts demonstrate that Mr. Dzwonkoski was more than an unwitting dupe of Mr. Kenney; given his knowledge of the circumstances, Mr. Dzwonkoski fails to qualify as a good faith transferee under the UFTA. Mass. Gen. Laws c. 109A, §9(a). Mr. Dzwonkoski had "general understanding" of Mr. Kenney's debt and inability to pay his creditors. *See Hasbro*, 37 F. Supp. 2d at

[14] Mr. Dzwonkoski also attempts to argue that the transfer was for fair consideration and that he is, therefore, not liable under the UFTA. However, there is no competent evidence of the fair market value of the Federal Street property. Since Mr. Dzwonkoski is not qualified as a real estate appraiser, he is not qualified to offer an opinion as to the value of the property. Even if there was evidence that he received fair consideration for the real estate, this is not a defense to an action under §5(a) of the UFTA. *See Comjean v. Cruickshank*, 191 B.R. 504, 508 (D. Mass. 1995) *citing Joseph P. Manning Co. v. Shinopoulos*, 317 Mass. 97, 99, 56 N.E.2d 869, 870 (1944).

97. Mr. Dzwonkoski was a co-defendant of Premier in *Rocky Mountain II.* He testified at his deposition that the reason he transferred his property to Mrs. Kenney and took back a mortgage because "if something wasn't done, they would put an attachment on the property which we had a mortgage on it and I wanted to have it kind of free and clear" (Dzwonkoski Depo. at 97-98). The law under the UFTA is not that a transferee must know every detail of the fraud being perpetrated by the debtor. *Max Sugarman Funeral Home,* 926 F.2d at 1257, n. 15. Rather, the law is that knowledge of any circumstance placing the transferee on inquiry deprives the transferee of the defense that he took in good faith. *See Jobin v. McKay,* 84 F.3d 1330, 1338 (10th Cir. 1996). "To determine whether a transferee acts in good faith, 'courts look to what the transferee objectively "knew or should have known"' instead of examining the transferee's actual knowledge from a subjective standpoint." *Brown v. Third National Bank,* 67 F.3d 1348, 1350 (8th Cir. 1995) (citations omitted). *See* 5 *Collier on Bankruptcy* ¶548.07[2][a] (15th ed. Rev. 2003). Thus, it is immaterial that Mr. Dzwonkoski "had no intention or knowledge that the sale of the Federal Street property might later be considered fraudulent or as a hindrance to the Plaintiff's attempts to collect debts from Mr. Kenney or the J.F. Kenney Corporation." (Affidavit of Mitchell Dzwonkoski, ¶6). To paraphrase the words of the court in *Max Sugarman Funeral Home,* Mr. Dzwonkoski was "privy to the fraudulent purposes of . . . the transfers" 926 F. 2d at 1256, n. 13, and therefore cannot claim to qualify as a "good faith transferee."

*E. The Court Should Grant Further Relief to Cheswell by Setting Aside or Subordinating the Mortgages Given By Susan Kenney to Mr. Dzwonkoski to the Attachment of Cheswell In this Matter*

Section 8(a) of the UFTA provides that "[i]n an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim. . . ." The court has wide equitable powers to set aside or subordinate mortgages given to transferees who did not take in good faith to provide an effective remedy for the creditors of the transferor. *See Joseph P. Manning Co. v. Shinopoulos,* 317 Mass. 97, 99, 56 N.E.2d 869, 870 (1944) ("if the conveyance is made and received for the purpose of hindering, delaying or defrauding creditors, it is fraudulent and can be set aside without regard to the nature or amount of consideration"); *Buckley v. John,* 314 Mass. 719, 727 (1943); *Service Mortgage Corp. v. Welson,* 293 Mass. 410, 412-13 (1936) ("[w]here . . . a judgment creditor has acquired a lien through attachment in a law action, the enforcement of which has been rendered inadequate by a fraudulent conveyance, he has in equity the right to have such obstacle removed"). Thus, in *Hasbro v. Serafino,* the court exercised its equitable powers to subordinate the mortgage given by the transferor (George Serafino) to the transferee (George's son Anthony) to the attachment of the creditor (Hasbro). 37 F.Supp. 2d at 98. Since the circumstances of the granting of the mortgages on the Federal Street property in this matter are almost identical to those in *Hasbro*, the court should provide Cheswell equitable relief by

setting aside or subordinating the mortgages to Cheswell's attachment in this matter.

## V. CONCLUSION

Mr. and Mrs. Kenney and their corporations have violated the UFTA by arranging for transfers of property to ensure such assets would be unavailable to satisfy a judgment in favor of Cheswell. Mr. Dzwonkoski is a transferee of the Kenneys and accepted the mortgage given to him with knowledge that Mr. Kenney's creditors were attempting to attach the real estate and that Mr. Kenney was insolvent. Under these circumstances, the Defendant Dzwonkoski's Motion to Dismiss or in the Alternative for Summary Judgment. should be denied and the court should enter further equitable relief by setting aside or subordinating the mortgages to the attachment of Cheswell.

The Plaintiff
CHESWELL, INC.
By Its Attorneys:

Felicity Hardee

Felicity Hardee, BBO #221230
Bulkley, Richardson and Gelinas, LLP
1500 Main Street
Springfield, MA 01115
(413) 272-6283

Dated: Sept. 13, 2004

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of September, 2004, a true copy of the above document was served upon the attorney of record for each party by first-class mail and upon James F. Kenney and Susan M. Kenney, pro se, by first-class mail.

Felicity Hardee

Felicity Hardee