UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re<br><br>KEEP SAFE SELF-STORAGE, INC.<br>COLLEGE SELF-STORAGE, INC.<br><br>Debtors | Chapter 11, No. 03-42756-HJB<br>(Jointly Administered) |



## DEBTORS' JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

Counsel for the Debtors:

George I. Roumeliotis, Esq.
(BBO#564943)
For HENDEL & COLLINS, P.C.
101 State Street
Springfield, MA 01103
Tel. (413) 734-6411
Fax. (413) 734-8069

Dated: December 1, 2003

KEEP SAFE SELF-STORAGE, INC.
COLLEGE SELF-STORAGE, INC.
Disclosure Statement

## TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i
I.    INTRODUCTION ................................................................................................................. 1
II.   PURPOSE OF THIS DISCLOSURE STATEMENT. ......................................................... 2
III.  SUMMARY OF PLAN REORGANIZATION. .................................................................. 4
      A.   ADMINISTRATIVE AND PRIORITY CLAIMS ................................................................. 4
      B.   SECURED CLAIMS ............................................................................................................ 4
      C.   GENERAL UNSECURED CLAIMS ..................................................................................... 6
           1.   Administrative Convenience Class .......................................................................... 6
           2.   Other General Unsecured Creditors ........................................................................ 6
      D.   EQUITY INTERESTS ......................................................................................................... 7
IV.   HISTORY OF THE DEBTORS' BUSINESS. ..................................................................... 7
      A.   THE HISTORY AND NATURE OF THE DEBTORS' BUSINESS AND EVENTS LEADING TO THE CHAPTER 11 FILINGS
           ............................................................................................................................................ 7
V.    PREPETITION TRANSACTIONS WITH INSIDERS. ..................................................... 10
VI.   CHAPTER 11 ISSUES AND OPERATIONS. ................................................................... 11
      A.   POSTPETITION REFOCUS AND TURNAROUND ............................................................. 11
      B.   DEBTOR'S COUNSEL ...................................................................................................... 12
      C.   CREDITORS' COMMITTEE .............................................................................................. 12
      D.   DEBTOR'S ACCOUNTANT ............................................................................................... 12
      E.   CASH COLLATERAL ISSUES ........................................................................................... 13
      F.   CHAPTER 11 TRUSTEE ................................................................................................... 13
VII.  THE PLAN OF REORGANIZATION. .............................................................................. 14
      A.   ADMINISTRATIVE CLAIMS ............................................................................................ 14
      B.   PRIORITY CLAIMS .......................................................................................................... 15
      C.   CLASS ONE: THE SECURED CLAIM OF THE TOWN OF BELCHERTOWN, MASSACHUSETTS ............................ 15
      D.   CLASS TWO: THE SECURED CLAIM OF THE JJBP, LLC .............................................. 15
      E.   CLASS THREE: THE CLAIM OF MONSON SAVINGS BANK ........................................... 17
      F.   CLASS FOUR: THE SECURED CLAIM OF TECH-FAST METAL SYSTEMS, INC. ............ 17
      G.   CLASS FIVE: THE CLAIMS OF ALLOWED GENERAL UNSECURED CREDITORS WITH CLAIMS OF LESS THAN $3,000.00 (ADMINISTRATIVE CONVENIENCE CLASS PURSUANT TO 11 U.S.C. §1122(B)) .............. 18
      H.   CLASS SIX: THE CLAIMS OF ALLOWED GENERAL UNSECURED CREDITORS WITH CLAIMS OF LESS THAN $3,000.00 (ADMINISTRATIVE CONVENIENCE CLASS PURSUANT TO 11 U.S.C. §1122(B)) .............. 19
      I.   CLASS SEVEN: EQUITY INTERESTS ............................................................................. 20
      H.   MEANS FOR EFFECTUATING THE PLAN ........................................................................ 20
           1.   Plan Confirmation Account and Transaction Among Holders of Equity Interests ............................... 20
           2.   Future Operations to Fund Obligations to Holders of Class 2, Class 4, and Class 6 Claims ................ 21
           3.   Retention of Property, Claims and Interests ........................................................... 21
           4.   Objections to Claims .............................................................................................. 21
      I.   FULL AND FINAL SATISFACTION .................................................................................. 22
      J.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................... 22
      K.   RETENTION OF JURISDICTION BY THE COURT ............................................................ 23

|      |                                                                    |    |
|------|--------------------------------------------------------------------|----|
| L.   | MODIFICATION OF THE PLAN                                           | 23 |
| M.   | NOTICE OF CONTINUANCE OF HEARINGS                                  | 23 |
| N.   | GOVERNING LAW                                                      | 23 |
| O.   | EXEMPTION FROM CERTAIN TRANSFER TAXES AND FEES                     | 24 |
| P.   | SUCCESSORS AND ASSIGNS                                             | 24 |
| Q.   | CONFIRMATION ORDER AND PLAN CONTROL                                | 24 |
| R.   | NOTICES                                                            | 25 |
| S.   | NO ADMISSIONS                                                      | 25 |

VIII. THE DEBTOR'S CURRENT AND POST CONFIRMATION OPERATIONS. ........ 25
- A. OPERATIONS AS OF THE COMMENCEMENT OF THIS CASE. ........ 25
- B. POST PETITION AND POST CONFIRMATION OPERATIONS. ........ 25
- C. EXECUTIVE OFFICERS AND DIRECTORS. ........ 26

IX. DISTRIBUTION TO CREDITORS IN THE EVENT OF CHAPTER 7 LIQUIDATION. ........ 26

X. CONFIRMATION HEARING. ........ 29

XI. REQUIREMENTS FOR CONFIRMATION. ........ 30
- A. BEST INTERESTS TEST. ........ 30
- B. FEASIBILITY OF THE PLAN. ........ 31
- C. ACCEPTANCE OF PLAN BY IMPAIRED CLASS. ........ 32
- D. CRAMDOWN: CONFIRMATION WITHOUT ACCEPTANCE BY ALL IMPAIRED CLASSES. ........ 33

XII. THE EFFECT OF CONFIRMATION. ........ 34

XIII. VOTING INSTRUCTIONS. ........ 35

XIV. TAX IMPACT OF PLAN. ........ 35

XV. CONCLUSION. ........ 37

### Exhibits

PLAN OF REORGANIZATION ........ A

CASH FLOW PROJECTIONS ........ B

LIQUIDATION ANALYSIS ........ C

the Property, junior to the liens of JJBP and Tech-Fast, to secure the Debtors' repayment obligations hereunder.

### D.    *Equity Interests*

As the absolute priority rule is not being violated by the proposed treatment of the various claims in these cases, the holders of Equity Interests shall retain their equity interests, whether the Plan is accepted or confirmed pursuant to 11 U.S.C. §1129(a), or whether it is confirmed pursuant to 11 U.S.C. §1129(b).   There are two shareholders holding the equity interests in the Debtors.  As is set forth in more detail below, in order to fund the Plan so that it can be effectuated, one of the shareholders shall contribute cash into the Debtors, at which time the equity interests of the other shareholder will be cancelled, leaving the funding shareholder as the sole owner of all the equity interests of the Debtors.

## IV.    HISTORY OF THE DEBTORS' BUSINESS.

### A.    *The History and Nature of the Debtors' Business and Events Leading to the Chapter 11 Filings*

The Debtors were both organized as corporations under the laws of the Commonwealth of Massachusetts on May 10, 2001.  College and Keep Safe were established by James F. Kenney of 72 Oakridge Drive, Belchertown, Massachusetts ("J. Kenney") for the purpose of acquiring and developing two parcels of real estate on which separate self-storage businesses would be located.  Keep Safe was originally incorporated under the name of Granby Self-Storage, Inc. with the intention that it would own and operate a self-storage business in Granby, Massachusetts.   The name was changed from Granby Self-Storage, Inc. ("Granby") to Keep Safe Self-Storage, Inc. on November 18, 2002.

The anticipated plans of acquiring and developing property in Granby, however, never materialized.  Accordingly, only College was initially active in any operations.  In approximately December 2000, a purchase and sale agreement was entered into for the acquisition of the Property, consisting of approximately 12.023 acres of land on Federal Street in Belchertown,

7

Massachusetts. The legal description for the Property is contained in a Deed recorded at the Hampshire County Registry of Deeds at Book 6401, Page 249. The agreement was contingent upon receiving all planning approvals from the Town of Belchertown for the construction of a self-storage facility.

J. Kenney researched the market saturation of self-storage units in the region, and determined that a new facility, with modern security and access features, could be successful. The location of the Property is a main road in Belchertown, and is proximate to the "five colleges" in Hampshire County, Massachusetts: University of Massachusetts, Amherst College and Hampshire College in Amherst, Mount Holyoke College in South Hadley and Smith College in Northampton. Post-secondary students constitute a significant percentage of the business of any self-storage business, especially during the summer months, and that is especially so with College's business, primarily due to its location which is convenient for Hampshire County students. College has also been successful in cultivating commercial accounts so as to minimize the effects of seasonal changes in rental volume.

From May to July 2001, College submitted plans to the Belchertown Planning Board and to the Belchertown Conservation Commission to obtain approval for the construction of approximately 52,000 square feet of storage space on the Property. The plans were approved in July 2001 by the Planning Board and an Order of Conditions was issued by the Conservation Commission permitting the construction to proceed. In October 2001, College obtained the necessary financing, closed on the purchase of the Property, and began preparatory site work. In November 2001, a building permit was issued and a contract was entered into with Tech-Fast Metal Systems, Inc. ("Tech-Fast"), a building materials company, for the metal buildings that would be installed on two concrete "slabs" or "pads" to be constructed on the Property.

In December 2001, the first concrete slab was constructed by Wesfield Construction, Inc. ("Wesfield"). In that same month, College terminated its agreement with Wesfield. Also in December 2001, College selected another company to complete the concrete work on the project.

Once the slabs were in place, Tech-Fast constructed the buildings, and a Certificate of

8

Occupancy was issued by the Town of Belchertown in April 2002. In May 2002, College opened for business. Initially, College employed an employee who was not a shareholder or officer for managing the day-to-day operations of the business. In September 2002, said employee's duties were taken over by J. Kenney.

Also in September 2002, as a result of a dispute that arose between J. Kenney and Adzima, an agreement was reached whereby Susan M. Kenney ("S. Kenney"), J. Kenney's spouse, was to pay the sum of $50,000.00 to Adzima to purchase Adzima's 49% interest in College. As a result, J. Kenney and S. Kenney owned 51% and 49% of the equity interests in College, respectively. Also as part of the consideration for S. Kenney's willingness to fund the buyout of Adzima, J. Kenney agreed to transfer to S. Kenney, shares in Keep-Safe sufficient to result in S. Kenney's ownership of 66.7% of the Keep Safe stock. J. Kenney retained the remaining 33.3% of the Keep Safe interests. These agreements were consummated in December 2002. The equity structure described above, and summarized in the following table, continues to this date:

| Shareholder | Percentage of College | Percentage of Keep Safe |
| --- | --- | --- |
| James F. Kenney | 51% | 33.3% |
| Susan M. Kenney | 49% | 66.7% |

College refinanced the Property in November 2002, paying off the then mortgage holder, Monson Savings Bank, with a new loan from Peoples Bank, with principal offices located in Holyoke, Massachusetts. The amount of the new loan was approximately $650,000.00. In connection with that loan, an appraisal of the Property was performed in late October 2002. That appraisal indicated that the Property had a fair market value of $965,000.00. The Debtors believe that there has been no deterioration in the real estate market in the time since the appraisal was performed. Accordingly, the Debtors believe that the value of the Property today is at least $965,000.00.

In January 2003, as part of the equity and debt restructuring that took place in connection with the Adzima buyout and the Peoples Bank refinance, and in connection with a desire by J. Kenney and S. Kenney to change the name of the business to Keep Safe Self-Storage, Inc.,

9

College transferred its interest in the Property to Keep Safe (after the name of said corporation was changed from Granby) for nominal consideration. At that point, the business began operating under the name of Keep Safe rather than College.

As a result of various legal issues involving J. Kenney personally and other entities in which he was a shareholder, which issues mushroomed in the months following the November 2002 refinance with Peoples Bank, J. Kenney's focus on the College business was diverted during the crucial winter months which ordinarily are the slowest for any self-storage business. Accordingly, College fell into arrears in its payment obligations to Peoples Bank in the approximate aggregate amount of $30,000.00 by May 2003. Peoples Bank commenced foreclosure proceedings against College, and scheduled a foreclosure sale for the morning of May 14, 2003. The Debtors sought counsel regarding their options shortly before the scheduled foreclosure. The Debtors were advised that Chapter 11 bankruptcy cases would be helpful in staying the foreclosure, and in providing the Debtors with the time necessary to consider reorganization options. The Debtors also realized that a foreclosure sale of the Property would result in a distressed sale value being realized for the Property, which would eliminate any recovery for other creditors.

On May 12, 2003, Keep Safe reconveyed the Property to College as the January 2003 transfer left College without assets. Later that day, both Debtors filed Chapter 11 bankruptcy petitions with the U.S. Bankruptcy Court for the District of Massachusetts.

## V.    PREPETITION TRANSACTIONS WITH INSIDERS.

During the year preceding the commencement of the cases, J. Kenney received small sums of money from the Debtors in the nature of salary draw and expense reimbursements. J. Kenney had other business interests during that time, and did not require a regular salary from the Debtors. Furthermore, cash flow considerations precluded the Debtors from paying a regular salary or wages to anyone for most of the year preceding the Petition Date. J. Kenney, holder of 33.3% of the common stock and Treasurer of Keep Safe, received from that company a salary draw of $400.00 in April 2003. J. Kenney, holder of 51% of the common stock and President,

10

Treasurer and Clerk of College, received from that company small amounts throughout the year prior to the Petition Date aggregating less than $1,500.00 as reimbursement of expenses paid by J. Kenney on behalf of College. J. Kenney is also one of the two directors for each of the Debtors. S. Kenney, holder of 66.7% of the common stock, and president and clerk of Keep Safe, received less than $500.00 in the form of expense reimbursements during 2003 prior to the Petition Date. No other officer, director or shareholder received any compensation from the Debtors in the one year period prior to the Petition Date. The Debtor has never issued any class of stock other than the common stock described above.

## VI. CHAPTER 11 ISSUES AND OPERATIONS

### A. *Postpetition Refocus and Turnaround*

Since the commencement of their Chapter 11 cases, the Debtors' self-storage business has improved drastically. Keep Safe became the operating company, with College owning the Property on which the business was conducted. Management immediately focused on maximizing the occupancy rates, and given the proximity of the Petition Date to the busy summer season, the occupancy rose to nearly 100% within weeks. By contrast, the occupancy rate on the Petition Date was 57.8%. Losses were eliminated and a small profit was produced. The percentage of storage units rented as of November 14, 2003 was a respectable 84.8%, notwithstanding that self-storage business generally is weak at said time of year.

Although the occupancy rate soared in the period since the Petition Date, during the first three months subsequent to the Petition Date, J. Kenney failed to file monthly operating reports as required by the Operating Guidelines of the Office of the U.S. Trustee. Said reporting deficiencies were corrected by late August 2003, and the Debtors are now up to date on their reporting requirements. The reason for the past deficiency in reporting was that some of J. Kenney's attention was diverted from the Debtors' cases as a result of significant health problems suffered by S. Kenney and the deaths of two close family members, as well as the ongoing litigation in the Chapter 11 bankruptcy case of an affiliate corporation, Premier Homes and Land Corp ("Premier"). The Premier case was converted to a case under Chapter 7 of the

11

Bankruptcy Code in July 2003. Shortly after that, J. Kenney focused his full attention on the Debtors' business affairs.

### B.   Debtor's Counsel

Shortly before the commencement of the Chapter 11 case, the Debtor consulted Hendel & Collins, P.C. of Springfield, Massachusetts ("H&C"). After the commencement of the case, the Debtor was authorized by the Court to retain H&C as its counsel.

### C.   Creditors' Committee

Subsequent to the commencement of this case, the United States Trustee reported that it had been unable to form a Committee of Unsecured Creditors pursuant to Section 1102 of the Bankruptcy Code.

### D.   Debtor's Accountant

In August 2003, the Debtors sought and obtained Bankruptcy Court approval to employ the firm of Bossielle, Morton and Associates, LLP, of Northampton, Massachusetts ("BM&A"), as their accountant.

During the case, BM&A has analyzed the Debtors' cash flow and profitability resulting from the self storage operations. This analysis has helped the Debtors to weigh alternative reorganization strategies. BM&A has also served the Debtors by assisting in the preparation of the financial data included in this Disclosure Statement, the monthly operating reports required to be filed with the Office of the U.S. Trustee, and in the preparation of necessary tax related documents.

### E.  *Cash Collateral Issues*

Shortly after the commencement of this case, the Debtor sought authorization to utilize such property of the estate as may be considered "cash collateral" pursuant to 11 U.S.C. §363. One creditor, JJBP, LLC ("JJBP"), has a security interest against the Debtors' cash collateral, as well as a first priority mortgage on the Property. JJBP purchased Peoples Bank's secured claim approximately one or two days prior to the Petition Date. The terms of the Court's Orders on the use of cash collateral have provided JJBP with rollover liens on postpetition accounts receivable to the extent of any diminution of any prepetition collateral. Additionally, the Court's Orders also have required the payment of monthly adequate protection payments to JJBP in the amount the interest that accrues on the JJBP claim, and also has required the payment of all real estate taxes accruing subsequent to the Petition Date. The daily amount of the accruing interest on the JJBP claim is $130.09. The Debtors have made all of the required payments.

### F.  *Chapter 11 Trustee*

On October 27, 2003, the Bankruptcy Court appointed Jack E. Houghton, Jr., of Pittsfield, Massachusetts, as Chapter 11 Trustee for the Debtors (hereinafter "Trustee"). The reasons for said appointment were the Court's concerns regarding the Debtors' management's failure to file operating reports in a timely fashion for the first 3 months of the bankruptcy cases, as well as the Court's concerns regarding some disbursements aggregating to approximately $2,700.00 made without specific Court Order and that were not otherwise specifically authorized by the existing Order on the use of cash collateral. Approximately $2,400.00 of said disbursements were to J. Kenney on account of payment for services performed for the Debtors and the remaining $300.00 was a payment made to an attorney to perform collection work on a defaulted account receivable. J. Kenney has since reimbursed the Debtors for the $300.00 payment to collection counsel. J. Kenney has not reimbursed the Debtors for the other payments due to cash flow issues that he is facing personally. The Trustee has permitted the Debtors to maintain in control of their finances, and has permitted J. Kenney to manage the day-to-day affairs of the business, with the condition that all disbursements must be approved in advance by the Trustee. This arrangement is anticipated to continue until confirmation of the Plan.

13

## VII. THE PLAN OF REORGANIZATION.

The Plan that is proposed by the Debtors seeks to ensure the continued operation and viability of the Debtors' self storage business by proposing an immediate payment of all administrative and priority debt, and providing for a reasonable amortization of its secured and general unsecured debt. The payment obligations on general unsecured debt would become secured by a mortgage junior to the mortgage held by JJBP. The Debtors are also proposing to immediately pay in full the relatively small claim held by one creditor for administrative convenience.

Management's goal in proposing the Plan is to provide a meaningful alternative to liquidation (in which the Debtors believe unsecured creditors would receive less than full payment on their claims), as well as a restructuring of its longer term debt in such a manner that maintains liquidity and ensures the business' continued survival. The Debtors hope that this, in turn, will provide future opportunities for its creditors and others to have continuing mutually beneficial and profitable business relationships.

The material terms of the Debtors' Plan are summarized as follows:

### A.   *Administrative Claims*

Administrative claims are defined in the Plan to include all claims for goods and services incurred by the Debtor subsequent to the filing of its Chapter 11 case. Administrative claims (other than for professional services by attorneys, accountants and other professionals and such other administrative expense claims as require Bankruptcy Court approval) shall be paid in full in accordance with their terms as they become due in the ordinary course of the Debtor's business.

Administrative Claims for professional services (i.e., services rendered by attorneys, accountants, the Trustee, and consultants) require Bankruptcy Court approval. These claims can be paid in full only after the entry of orders allowing those claims, after notice and hearing. Neither H&C nor BMS have been paid any sums since the Petition Date. H&C has been provided prepetition retainers by the Debtors, the balances of which were $13,148.50 as of the

14

Petition Date. Payments to professional persons shall be made in such amounts and at such times as may be authorized by the Court, after notice and hearing, as provided by the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Massachusetts Local Bankruptcy Rules. The source of the payments to such professional persons shall be the Plan Confirmation Account described in Section 7.H.1 of this Disclosure Statement. The Debtors estimate that such further payments to administrative claimants (in addition to any retainers presently held) will be approximately $30,000.00 for the Debtors' legal fees and related expenses and $5,000.00 for accounting fees and related expenses. Additionally, the Debtors estimate that the Trustee's and his counsel's fees and expenses in this case should be less than $5,000.00.

### B.    *Priority Claims*

Priority claims will be paid in full on or before the first day of the second month after the Plan Effective Date or the date that such Claim becomes an Allowed Claim, whichever is later.

### C.    *Class One: The Secured Claim of the Town of Belchertown, Massachusetts*

The secured claim of the Town of Belchertown, Massachusetts (hereinafter "Town"), for real estate taxes plus accrued interest at the rate of 14% per annum as provided by applicable law, which claim is on account of the real estate owned by College, shall be paid in full on the Effective Date. The Debtors believe that the amount due to the Town is nominal. The Town will maintain its statutory lien to secure any sums that are now due or that will become due. The Town's claim, therefore, is not impaired, and therefore, the Town shall not be entitled to vote on the Debtors' Plan.

### D.    *Class Two: The Secured Claim of the JJBP, LLC*

The Claim of JJBP, LLC ("JJBP") shall be bifurcated into two components: (i) the principal balance that would have existed as of the Petition Date if College had not fallen into

[handwritten annotation: "missing a sentence?"]

15

to $634,538.49 (hereinafter "Principal Component"), and (ii) the arrearage of the accrued interest and principal that existed as of the Petition Date (the sum of the unpaid monthly payments due prior to the Petition Date), along with attorneys fees and other costs to which JJBP is entitled pursuant to 11 U.S.C. §506(b), which is in the total amount of $45,122.31 (hereinafter "Interest/Fee Component"). JJBP has estimated that its attorneys fees and other costs to which it would be entitled pursuant to 11 U.S.C. §506(b) will be in the amount of $10,970.86 as of the Effective Date, and the Debtors believe said amount is reasonable. Said amount is incorporated in the Interest/Fee Component.

The Principal Component shall be paid in full in equal, consecutive, monthly installments of principal and interest in the amount of $6,914.44. Interest on the Principal Component shall be fixed at the rate of nine (9%) percent per annum, accrued from the Plan Effective Date. Interest that has accrued on the Principal Component subsequent to the Petition Date has been paid during the pendency of the Debtors' Chapter 11 cases. The first Plan payment shall be made on the first day of the second month after the Plan Effective Date. Based upon the amount of the claim projected as of the Plan Effective Date, the Debtors estimate that the amortization period will be approximately 13 years. Notwithstanding the foregoing, however, the unpaid balance of the Principal Component will be due and payable in full 3 years from the Plan Effective Date. JJBP will retain a first priority mortgage on the real estate owned by College to secure the Principal Component.

The Interest/Fee Component shall be paid in full in equal, consecutive, monthly installments of principal and interest in the amount of $491.69. Interest on the Interest/Fee Component shall be fixed at the rate of ten (10%) percent per annum, accrued from the Plan Effective Date. The first Plan payment shall be made on the first day of the second month after the Plan Effective Date. Based upon the amount of the claim projected as of the Plan Effective Date, the Debtors estimate that the amortization period will be approximately 13 years. Notwithstanding the foregoing, however, the unpaid balance of the Interest Component will be due and payable in full 3 years from the Plan Effective Date. JJBP's mortgage on the real estate owned by College shall serve as collateral for the Debtors' obligation to pay the Interest/Fee Component as provided herein. The Debtors shall have the right to prepay all the obligations to JJBP as described herein at any time without penalty.

JJPB is impaired under the Debtors' Plan. Accordingly, JJBP shall be entitled to vote on the Plan.

### E.   Class Three: The Claim of Monson Savings Bank

Monson Savings Bank ("Bank") has filed a Proof of Claim against College in the amount of $363,823.40, as a result of a prepetition guaranty executed by College in favor of the Bank. The Bank also sought in Massachusetts State Court a prejudgment real estate attachment against real estate standing in the name of College; however, at the time of the granting of the attachment, no real estate stood in the name of College. The Real Estate stood in the name of Keep Safe. As stated earlier in this Disclosure Statement, Keep Safe reconveyed its interest in the Real Estate to College prior to the commencement of the case.

The Bank's claim is secured by mortgages on real property owned by Premier Homes and Land Corporation ("Premier"), a corporation that is an affiliate of the Debtors. Premier is currently in a Chapter 7 Bankruptcy case pending before this Court under Docket No. 03-41177-HJB, with Attorney David W. Ostrander serving as its Chapter 7 Trustee. Mr. Ostrander has obtained the Bankruptcy Court's authorization to sell the real estate owned by Premier on which the Bank has mortgages, and the Debtors anticipate that those sales will close in the upcoming days and weeks, the result of which will be that the Bank's claim will be paid in full. No payment will be made by either of the Debtors to the Bank.

As the Bank will have been paid in full prior to the Effective Date, the Bank is not impaired in the Debtors' bankruptcy cases, and shall not be entitled to vote on the Plan.

### F.   Class Four: The Secured Claim of Tech-Fast Metal Systems, Inc.

Class 4 consists of the secured proof of claim filed by Tech-Fast Metal Systems, Inc. ("Tech-Fast"). Tech-Fast asserts that it has a secured claim against the real estate owned by College arising from a state law mechanics lien to secure its claim in the amount of $15,546.82

("Tech-Fast Claim"). Said lien is junior to the mortgage lien of JJBP described above. For purposes of this Plan only, the Debtors will treat the Tech-Fast claim as asserted in its proof of claim. In the event the Plan is not confirmed, the Debtors reserve the right to contest any portion of the Tech-Fast claim, including, but not limited to, its claim that it is secured.

The Debtors propose to pay the Tech-Fast Claim in full in equal, consecutive, monthly installments of principal and interest in the amount of $487.18. Interest on the Tech-Fast Claim shall be fixed at the rate of eight (8%) percent per annum, accrued from the Plan Effective Date. The first Plan payment shall be made on the first day of the second month after the Plan Effective Date. Tech-Fast shall not be entitled to any interest or other costs or fees on its claim accrued prior to the Plan Effective Date. Based upon the amount of the Tech-Fast Claim, the Debtors estimate that the amortization period will be 36 months. Tech-Fast will retain its lien on the real estate owned by College to secure its claim, which lien shall remain junior to the mortgage lien of JJBP. The Debtors shall have the right to prepay the obligations described herein at any time without penalty.

The Tech-Fast Claim is impaired under the Plan. Accordingly, Tech-Fast shall be entitled to vote on the Plan.

    G.    *Class Five: The Claims of Allowed General Unsecured Creditors with Claims of Less Than $3,000.00 (Administrative Convenience Class Pursuant to 11 U.S.C. §1122(b))*

Class 5 consists of all Unsecured Claims against the Debtors of less than $3,000.00. Only one creditor, Massachusetts Electric Company, has allowed claims against the Debtors totaling less than $3,000.00 (one has been filed in each case). The claims filed by Massachusetts Electric Company in these cases total $2,529.44. The Debtors propose to pay these claims in full on the first day of the second month after the Plan Effective Date. Accordingly, these claims are not impaired, and the holder of the Class 5 Claims shall not be entitled to vote on the Plan.

**H.    *Class Six: The Claims of Allowed General Unsecured Creditors with Claims of Less Than $3,000.00 (Administrative Convenience Class Pursuant to 11 U.S.C. §1122(b))***

Class 6 consists of all Unsecured Claims against the Debtors totaling $3,000.00 or more that are not otherwise classified in the Plan. Objections to Class 6 Claims shall be determined by adjudication or settlement in accordance with the procedures set forth in Section 5.5 of the Plan and as summarized below in Section 7.H.4 of this Disclosure Statement. The allowed claims of General Unsecured Creditors in Class 6 shall be referred to as "Allowed Class 6 Claims". The claims of unsecured creditors in Class 6 total $40,836.35, and are held by one creditor, Wesfield Construction, Inc.

The Debtors propose to pay the Allowed Class 6 Claims in full in 36 equal, consecutive, monthly installments of principal and interest, with interest accruing from the Plan Effective Date at the fixed rate of ten (10%) percent per annum. The first Plan payment shall be made on the first day of the second month after the Plan Effective Date. Based upon the amount of the filed Class 6 Claims, the monthly payment would be $1,317.67. In the event that the Allowed Class 6 Claims is less than $40,836.35, but is $3,000.00 or more, then the monthly payment shall be adjusted to fully amortize the Allowed Class 6 Claims, with interest at 10% per annum, over a period of 36 months. If any Allowed Class 6 Claim is less than $3,000.00, it shall be treated as a Class 5 Claim. Otherwise, the Allowed Class 6 Claims shall be secured by a mortgage on the property owned by College, junior to the liens of JJBP and Tech-Fast, to secure the Debtors' obligations hereunder. Said mortgage shall be upon the Statutory Condition pursuant to Massachusetts Law, and shall provide for a 30 day written notice of any default, with the Debtors' ability to cure such default within said 30 day period. Additionally, as a result of the fair market value of the Property and the aggregate amount of senior liens, the Debtors believe that the Allowed Class 6 Claims will be fully secured. The Debtors shall have the right to prepay the obligations described herein at any time without penalty.

The Claim in Class 6 is impaired under the Plan. The holder of the Claim in Class 6 is entitled to vote to accept or reject the Plan.

19

### I. *Class Seven: Equity Interests*

As the absolute priority rule is not being violated by the proposed treatment of the various claims in these cases, the holders of Equity Interests shall have the right to retain their equity interests, whether the Plan is accepted or confirmed pursuant to 11 U.S.C. §1129(a), or whether it is confirmed pursuant to 11 U.S.C. §1129(b). There are two shareholders holding the equity interests in the Debtors. However, as is set forth in more detail below, only one of the shareholders, S. Kenney, will be contributing cash into the Debtors in order to fund the Plan so that it can be effectuated. As a result, therefore, the equity interests of J. Kenney shall be cancelled as of the funding of the Plan Confirmation Account described below, which shall result in S. Kenney holding all of the equity interests in the Debtors. The holders of Equity Interests in Class 7 are not impaired under the Plan, and therefore, they shall not be entitled to vote on the Plan.

### H. *Means for Effectuating the Plan*

The means necessary for the execution of the Plan are not dependent on the whether the Plan is confirmed pursuant to 11 U.S.C. §1129(a) or 11 U.S.C. §1129(b), and are summarized below.

1. Plan Confirmation Account and Transaction Among Holders of Equity Interests

As noted above, the persons holding the equity interests in the Debtors, and the percentages owned in each of the Debtors, are as follows:

| Shareholder | Percentage of College | Percentage of Keep Safe |
|---|---|---|
| James F. Kenney | 51% | 33.3% |
| Susan M. Kenney | 49% | 66.7% |

On the Plan Effective Date, Susan M. Kenney shall infuse into a fund held by counsel for the Debtors (Hendel & Collins, P.C.) cash in the amount of $45,000.00 ("Plan Confirmation Account"). The funds in the Plan Confirmation Account, along with available cash in the

20

Debtors' accounts as of the Effective Date, shall be used to satisfy all claims described in Article III of the Plan, as well as the Class 1 and Class 5 Claims. As James F. Kenney is not infusing any cash into the Debtors in connection with this Plan, J. Kenney's equity interests shall be cancelled. Accordingly, as of the funding of the Plan Confirmation Account, Susan M. Kenney shall be the owner of 100% of the interests of both Debtors.

      2.      Future Operations to Fund Obligations to Holders of Class 2, Class 4, and Class 6 Claims

The monthly payments required to be made to holders of Class 2, Class 4 and Class 6 claims shall be made from income derived by the Debtors from ongoing operations. The Debtors project that there will be sufficient funds available on a monthly basis to make such payments. Attached hereto as Exhibit "B" is a cash flow projection indicating the Debtors' projection as to income and expenses for approximately 36 months following the Effective Date.

      3.      Retention of Property, Claims and Interests

Notwithstanding the method by which confirmation is accomplished, Keep Safe shall retain all property of its estate, and College shall retain all property of its estate. The retained property shall be used and employed by the Debtors in the continuance of their businesses. Except as otherwise provided herein or in the Plan, all of the Debtor's property and assets shall vest in it as of the Confirmation Date, free and clear of all claims and interests that accrued against the Debtor on or before the Confirmation Date. Additionally, pursuant to §1123(b)(3) of the Bankruptcy Code, the Debtor shall retain and may enforce any and all claims or interests, except claims or interests expressly waived, relinquished or released under this Plan or otherwise released or relinquished pursuant to an Order of the Bankruptcy Court.

      4.      Objections to Claims

At least ten (10) days prior to the date that the Debtor solicits acceptance of the Plan, the Debtor shall have filed any and all objections that it intends to make to Claims of Class Six creditors whose Claims would otherwise be allowed by (i) the filing of a Proof of Claim on or before July 21, 2003, the date fixed by the Bankruptcy Court as the Bar Date for the filing of